## UNITED STATES v. JEFFERSON.

### (Circuit Court, W. D. Kentucky. January 4, 1905.)

1. LOTTERIES—PRIZE PACKAGES—COUPONS.

Defendant, to induce the sale of a cereal called "Mother's Oats," placed in each package a coupon on which one of the letters which spelled the word "Mother's" was printed, and offered premiums to persons holding coupons which would spell the word "Mother's"; the letter "O" being placed on only 1 coupon in 500. *Held*, that such scheme was a lottery, within Act Cong. March 2, 1895, c. 191, 28 Stat. 963 [3 U. S. Comp. St. 1901, p. 3178], providing that any person who shall cause to be carried from one state to another in the United States any paper, certificate, or instrument purporting to be or representing a ticket, chance, share, or interest in, or dependent upon the event of, a lottery, etc., or other similar enterprises offering prizes dependent upon lot or chance, shall be guilty, etc.

[Ed. Note.—What constitutes a lottery, see note to MacDonald v. United States, 12 C. C. A. 346.]

R. D. Hill, U. S. Atty.

Augustus E. Willson and W. M. Smith, for defendant.

EVANS, District Judge. The indictment in this case, to which the defendant has demurred, is founded on the first section of the act of March 2, 1895, c. 191, 28 Stat. 963 [3 U. S. Comp. St. 1901, p. 3178], which, so far as it may apply to the questions now raised, is in this language:

"That any person who shall cause to be * * * carried from one state to another in the United States any paper, certificate or instrument purporting to be or represent a ticket, chance, share or interest in or dependent upon the event of a lottery, so-called gift concern, or other similar enterprise offering prizes dependent upon lot or chance, * * * shall be," etc.

The indictment shows that a commodity called "Mother's Oats" was sold in 10-cent packages, each of which contained a coupon which elaborately set forth a scheme for awarding premiums, and on the face of which was printed in red ink one or the other of the letters which spell the word "Mother's." The important premiums offered under the scheme are given only to those persons who hold coupons, the large red letters on the face of which can be so combined as to compose the word we have mentioned. The letter "O" is placed on only one coupon in 500, and obviously there is little chance to win one of the prizes; but there is a chance, though small, and each persistent purchaser of the packages and coupons buys it. Some of these packages, with the coupons inclosed, are charged to have been shipped by the defendant from Illinois to Kentucky, and that transaction is the occasion of this indictment; the government insisting that the coupons described come within the true intent and meaning of the act of Congress, and the defendant to the contrary.

Although the counsel for the defendant have urged otherwise, I think we may, at the outset, lay aside as immaterial all questions as to the mere sale of Mother's Oats in packages containing the coupons, and all questions as to the price and value thereof. Sales of such commodities in packages containing the coupons may be altogether lawful

in the state where they occur. They may be lawful in any state, for their legality may depend upon local laws. Congress has not undertaken to deal with that phase of the question. It has only undertaken to prohibit the carrying from one state to another of any such paper, certificate, or instrument as is described in the act, and the question we are to decide is whether the coupons come within that legislation. Upon reading the indictment, and the coupon therein set forth, it appears that what is proposed to be done is to give certain prizes, called "premiums," upon certain contingencies. Those contingencies are wholly dependent upon chance, which I take to be the very essence of a lottery. Except by the operation of mere chance, no allotment of premiums to particular persons can eventuate. The important premiums (or prizes) offered are ten in number, and the ascertainment of the person entitled, under the scheme, to one of those premiums, is wholly dependent upon chance; and the number of chances depends, of course, upon the number of packages purchased. Obtaining a premium (or prize) under the scheme is made to turn upon the finding upon the coupons held by any one person large red letters which can be combined into the word "Mother's." Unless that can be done, no person will be entitled to one of the ten important premiums offered. The assignment of a premium (or prize) to any given person must be the result of the operation in his favor of the chances that bring about that combination of letters. Does the obtaining of such a premium depend upon the event of a "lottery" or "chance," within the meaning of those words in the statute? In Horner v. United States, 147 U. S. 449, 13 Sup. Ct. 409, 37 L. Ed. 237, the Supreme Court entered into an elaborate discussion of the meaning of the word "lottery," and, as I view the opinion in that case, I must hold that obtaining a premium under and through the scheme described in the indictment in this case must be the result of a lottery. At all events, it is dependent upon chance. Certainly there was a "paper," "certificate," or "instrument" purporting to represent a "chance" in the scheme of giving, and determining who should get, the premiums or prizes; "premiums" and "prizes" being, I think, equivalent words, within the meaning of the act. It seems to me that we must not construe the statute as embracing only such a lottery as the Louisiana Lottery was, where there was a wheel and other paraphernalia for drawing out numbers, because I do not think Congress had reference to any particular mechanism for giving effect to the operation of lot or chance. I think it had a more general purpose, in the language used, than that, and that a more unrestricted meaning should be given to the words of the statute; and, without undertaking to lay down any general principles or to give any precise definitions, it will suffice to hold that the facts charged in the indictment present a case within the general meaning and intent of the act. I think, if the facts stated in the indictment are true, the accused must be found to have caused a common carrier to carry from one state to another a paper, certificate, or instrument purporting to "represent" a "chance" in what may properly be called a lottery or other similar enterprise. This the act makes a public offense.

The demurrer must be overruled.