**UNITED STATES v. 83 CASES OF MERCHANDISE LABELED "HONEST JOHN."**

**SAME v. 180 CASES OF MERCHANDISE LABELED "WONDER STORE," etc.**

**Civ. Nos. 309, 381.**

District Court, D. Maryland.

Oct. 12, 1939.

Bernard J. Flynn, U. S. Atty., of Baltimore, Md., for the United States.

Horace J. Donnelly, Sr., and Horace J. Donnelly, Jr., both of Washington, D. C., and Frederick H. Hennighausen, of Baltimore, Md., for claimant.

COLEMAN, District Judge.

The question before the Court is as to the right to import from Japan certain articles hereinafter described. It arises on two libels brought by the Government claiming that the articles are non-importable, and on the answers thereto in the form of denials.

The Government relies upon Section 305 of the Act of June 17, 1930, 19 U.S.C.A. § 1305(a), which provides as follows: "All persons are prohibited from importing into the United States from any foreign country * * * any lottery ticket, or any printed paper that may be used as a lottery ticket, or any advertisement of any lottery. * * *" Then follow provisions for seizure and forfeiture. The Government also relies upon a related criminal statute with a provision also for forfeiture of the contraband articles (19 U.S.C.A. § 1593(b), which is as follows: "If any person fraudulently or knowingly imports or brings into the United States, or assists in so doing, any merchandise contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise after importation, knowing the same to have been imported or brought into the United States contrary to law, such merchandise shall be forfeited and the offender shall be fined in any sum not exceeding $5,000 nor less than $50, or be imprisoned for any time not exceeding two years, or both."

There is also the following statute (18 U.S.C.A. § 387) but without any forfeiture clause: "Whoever shall bring or cause to be brought into the United States or any place subject to the jurisdiction thereof, from any foreign country, for the purpose of disposing of the same, any paper, certificate, or instrument purporting to be or to represent a ticket, chance, share, or interest in or dependent upon the event of a lottery, gift enterprise, or similar scheme, offering prizes dependent in whole or in part upon lot or chance, or any advertisement of, or list of the prizes drawn or awarded by means of, any such lottery, gift enterprise, or similar scheme; * * * or shall knowingly take or receive, or cause to be taken or received, any such paper, certificate, instrument, advertisement, or list so brought, deposited, or transported, shall, for the first offense, be fined not more than $1,000, or imprisoned not more than two years, or both; and for any subsequent offense shall be imprisoned not more than two years." The omitted part of the statute has similar provisions relating to interstate commerce.

In one Libel No. 381 there are involved 83 cases each containing twenty pasteboard boxes or cartons labeled "Honest John." The other Libel, No. 309, involves 180 cases with twenty pasteboard cartons, more or less, to the case, labeled "Wonder Store", and 2 cases containing twenty cartons to a case, more or less, labeled "Diamond Jim." All of the boxes, or cartons,

themselves contain a number of smaller pasteboard boxes, each bearing a number, and are so inserted in the "mother" box that these numbers are apparent when that box is set up, so that it rests upon one of its narrower sides, and one of its broader sides remains open. On the opposite broad side cover, or front, of that box is a series of small pasteboard pull-tabs, so constructed that when a tab is removed by a purchaser, there is exposed underneath a number, which entitles the purchaser to that one of the collection of the smaller boxes, set, as above explained, within the larger box, which bears the same number. Each of these smaller boxes involved in Libel No. 381 contains a small amount of cheap candy and, in addition, a cheap trinket of similar or equal value in every case, the entire contents of none of these small boxes exceeding a few cents in value. The same is true with respect to the similar boxes involved in Libel No. 309, except they contain no candy.

By virtue of the statutes just referred to, the Government claims that all of this merchandise should be confiscated as non-importable matter.

Briefly summarized, the contention of the Government is that all of these articles fall within the definition that the Supreme Court has adopted in determining what is a lottery. But the question is not quite as simple as the Government would make it appear, for it is to be noted that one of the statutes here invoked (19 U.S.C.A. § 1305) by its terms refers only to "any lottery ticket"; and the other statute relied upon (18 U.S.C.A. § 387) merely refers in broad terms to all contraband goods, and makes no specific reference to lottery tickets, or to anything of that kind.

■■ The three elements which the Supreme Court has said are necessary to constitute a lottery are a prize, a consideration, and a chance. See Horner v. United States, 147 U.S. 449, 13 S.Ct. 409, 37 L.Ed. 237. But there is a very significant, distinguishing feature involved in the goods now before the court; that is to say, there is no single prize, no group of prizes, but a prize given for every chance that is taken. That fact, namely, that a premium or prize is given for every chance taken,—albeit it is not known at the time the money is paid and the number is drawn just what the prize is, appears to this court to take these articles out of the forbidden class. Furthermore, pooling the proceeds derived from chances or tickets taken or purchased, and then allotting such proceeds, or a part of them or their equivalent, by chance, to one or more such takers or purchasers, are the indicia of a lottery, and are absent here. In a lottery, the ticket holder speculates for a prize greatly disproportionate to the stake that he has risked. Here, there is no substantial difference between the amount paid and the value of the individual prize received therefor. The amount to be paid is 1, 2 or 5 cents, and such prize, a cheap toy or candy, etc., is of like value.

It may be that certain premium or gift enterprise devices now in common use, such as claw machines and punch boards, if sent through the mails, or in inter-state commerce, give rise to violations of the similar statute involving the mails and·interstate commerce. See 18 U.S.C.A. § 336. But such devices are likewise to be distinguished, and there appear to be no reported federal decision involving the precise type of device before us, and no reported decision construing the wording of the importation statute here directly involved. 19 U.S.C.A. § 1305. So we must decide this case upon its own facts, and in a practical, sensible way, so long as we do no violence to the words of the statute.

Since the Supreme Court first dealt with this question of lottery in Horner v. United States, 147 U.S. 449, 13 S.Ct. 409, 37 L.Ed. 237, and gave of necessity a rather broad interpretation of the statute, already referred to, prohibiting sending lottery matter through the mails (18 U.S.C.A. § 336), there has been some confusion in the decisions as to just what was embraced in its terms. It may be that if we take certain language of that decision and other decisions of the Supreme Court, and divorce it from the full context of the particular opinion of which it forms a part, and from the facts of the particular case, and do likewise with respect to the opinions of lower courts, there may be found some support for the Government's contention. But such is not permissible.

■ I rely for my present conclusion primarily upon what I believe to be the basis of the lottery idea, as adopted by the Supreme Court in Horner v. United States, supra, and clarified in the various dictionary definitions of the word "lottery," set forth at length in that decision, which I will not now quote, because suffice it to

say that a composite summary of those definitions, and of what the Supreme Court gave as a definition of lottery, is that a lottery shall consist of a chance or chances taken, for a consideration, in the hope or expectation that something would be obtained of greater value than that which was given up, but with the full knowledge that nothing at all might be obtained; in other words, that there would be some "blanks" in the drawing.

Without referring at length to lower court decisions construing similar language in the related statutory provisions governing use of the mails and regulating interstate commerce, suffice it to point out that the distinction here made is supported, indirectly, by such decisions as United States v. Jefferson, C.C., 134 F. 299, and United States v. McKenna, D.C., 149 F. 252.

In the first of these cases, defendant, in order to induce the sale of a cereal called "Mother's Oats", placed in each package a coupon, on which one of the letters spelling the word "Mother" was printed, and offered premiums to persons holding coupons which would spell the word "Mother's", the letter "O" being placed on only one coupon in five hundred. The Court held that such article was a lottery, and that therefore its movement in interstate commerce violated the provisions of 18 U.S.C.A. § 336. It is perfectly obvious that this case falls within the class of cases from which I have just sought to distinguish the present situation, in that there it was understood that no prize at all might be got. It was a pure scheme of chance. In the second case above referred to, there was a device by which a prize was given to the person who obtained seven complete paper animals, the parts of one of which, to be put together, were contained in each package of a food product sold, but without anything on the outside of the package to indicate what animal was contained therein. The Court held that such was a lottery within the same statute, due to the complete element of chance in the purchase of the package.

I have been referred by the Government to the very much more recent case of the National Conference on Legalizing Lotteries v. Farley, 68 App.D.C. 319, 96 F.2d 861, a decision of a little more than a year ago by the United States Court of Appeals for the District of Columbia.

That case involved a contest which required the contestants to number, in order of importance, sixteen possible public uses for money secured from lotteries, and the Court held that since the judges would be compelled to award the prizes almost entirely upon chance, and that the prize would go to him who was most fortunate in guessing how the judges would finally compose their differences, the Postmaster General was justified in issuing a fraud order on the ground that the contest was a lottery or a scheme for distribution of money by chance, contrary to 39 U.S.C.A. § 259.

That case is likewise distinguishable for the same basic reason which has just been explained. For example, the Court, Chief Justice Groner, towards the end of the opinion, says (68 App.D.C. 319, 96 F. 2d at page 863): "Even conceding the integrity of the judges and the fixing by them of some common ground of primacy, it is nevertheless obvious that whatever ground of certainty is attained must be reached by an inescapable element of chance. Considered in that light, the conclusion is irresistible that the prize would go to him who is the most fortunate in guessing how the judges will finally compose their differences. And guessing contests have invariably been held to be within the ban of the statute. They have been said again and again to be entirely unlike a contest of essays decided upon recognized standards of literary merit and reasonably well-settled ideas of sound argument." In other words, the point which this Court wants to stress as a distinguishing feature is that there the contestants were competing by chance for prizes, and a large number of them, of course, would get nothing. Here, I do not find any evidence of such a situation. Every one is seeking a prize, and every one gets a prize that pays his money. It is true he does not know in advance what the prize will be, but I think it would be too far-fetched, and would draw under the federal prohibition too many petty and harmless devices, if we should adopt such a construction of the statute in question as would make devices of the present kind contraband, especially since no element of fraud is even suggested.

I will sign an order in accordance with this opinion, dismissing both libels.