UNITED STATES of America

v.

THREE (3) GAMBLING DEVICES, KNOWN AS JOKERS: Sub-Assembly and Essential Part of a Gambling Device.

Civ. A. No. 14285.

United States District Court
W. D. Pennsylvania.
Sept. 17, 1957.

Thomas Shannon, Asst. U. S. Atty., Pittsburgh, Pa., for plaintiff.

Alexander Cooper, Pittsburgh, Pa., for defendant.

MARSH, District Judge.

On or about February 6, 1956, the United States filed 28 libels [1] in accordance with Public Law 906, 81st Congress, R.S. 161, Sec. 2, 15 U.S.C.A. § 1171 et seq., seeking forfeiture and condemnation of some 49 alleged gambling devices and sub-assemblies thereto, which alleged gambling devices are known variously as "Jokers", "Electronic Point Makers", and "Bug A Boos". It was agreed to by counsel that Civil Action No. 14285 would be tried first. [2] From the evidence and the stipulations of counsel, the court makes the following:

Findings of Fact.

1. The machines seized under libel at Civil No. 14285 are "Joker" numbers X550023, X550129, X509187, which together with the remote control recorder boxes accompanying each, are the property of one Robert Lamont. [3]

2. These machines and accompanying remote control recorder boxes were transported in interstate commerce from Chicago, Illinois, to Altoona, Pennsylvania, on or about January 21, 1955.

3. These articles were seized by the government from the B.P.O.E. Lodge at 1211–1213 Twelfth Street, Altoona, Pennsylvania, which is within the Western District of Pennsylvania and within the territorial jurisdictional limits of this court.

4. These machines were neither designed nor manufactured, nor in any way altered to operate by means of the insertion of a coin, token, or similar object; neither were the machines designed, manufactured, or in any way altered so that when operated they might deliver, as the result of the application of an element of chance, any money or property.

5. The design of these machines is such that a person operating them might become entitled to receive money as the result of the application of an element of chance.

6. These machines do not have as an essential part thereof a drum or reel with insignia thereon.

7. The remote control recorder boxes are subassemblies and essential parts of these machines and were designed and intended to be used solely in connection therewith.

Discussion.

Since the libeled machines are not slot machines (See Finding 4), it is clear that if they are to be condemned as gambling devices under the act they must be found to be such under Sec. 1171(a) (1) (B), and the remote control recorder boxes under Sec. 1171(a) (3).

We feel that the machines do not come within the meaning of Sec. 1171(a) (1) (B) for the sole reason that they do not meet one of the requirements thereof, viz.: they do not have as "an essential part * * * a drum or reel with insignia thereon. * * *"

A typical machine consists of a metal cabinet about 2′ high and 18″ wide. It

1. These libels were filed at Civil Nos. 14239, 14241, 14242, 14243, 14244, 14245, 14246, 14247, 14248, 14250, 14251, 14253, 14254, 14256, 14257, 14259, 14260, 14261, 14263, 14279, 14280, 14281, 14283, 14284, 14285, 14286, 14288, 14290.

2. It was also agreed to by counsel that if the court should find that the machines or mechanical devices in Civil Action No. 14285 were so constructed that they did not contain drums or reels with insignia thereon as an essential part thereof, then the libels at all the numbers listed under footnote 1 should be dismissed except as to 4 of the 49 machines, which 4 machines claimants' counsel admitted were coin operated and to which claimant waived all claim, these being Bugaboos Nos. 680, 681, 702, 779.

3. Robert Lamont answered this libel praying for a dismissal thereof.

contains various electrical circuits within, and on the upper front face there is a glass panel upon which various insignia appear in three vertical rows.[4]

Behind each of these insignia is a small electric light bulb. On the front face at the upper left corner of the glass panel is a small plastic button; alongside of the button, where the coin slot is on the common slot machine, is a larger plastic insert with an electric light bulb behind it. Located on the lower part of the front of the machine is another glass panel behind which are three plastic discs or reels, upon the circumference of each of which appears the figures "0" through "9". These discs or reels, one of which was introduced into evidence by the government as Exhibit 2, are placed side by side on a common axle so that they act as a counting device similar to those appearing on electric cash registers. On the right side of the machine as one faces it is a manually operated handle. Behind the machine is an electrical plug receptacle into which the electrical cord from the remote control recorder box is inserted.

The recorder box is about 10″ wide and 7½″ high; it, too, contains electrical circuits and also discs or reels arranged as a counting device as previously explained. This box has two plastic buttons, one marked "credit", the other, "cancel."

The method by which these machines were operated was as follows: The person or establishment controlling the machine would set a per-game price for each machine. One desiring to play the machine would give the person in charge a certain amount of money. The latter would then press the "credit" button on the recording box which would register on that box and on the machine to which it was electrically connected the number of games to which the money paid entitled the player, and the plastic insert at the top left side of the machine would then light. To play, then, the player pushed the plastic button and pulled the handle on the right side of the machine. By pulling the handle, electrical circuits in the machine were activated causing the light bulbs under each of the insignia appearing on the glass front to flash on and off. Finally, all of the lights in each vertical row of insignia would go off except one in each row. Three bulbs remaining lighted under three of the insignia formed a combination which would determine if the player won or lost. If he lost, the number of games remaining on the indicator on the machine and the recorder box would have diminished by one; if he won, those figures would increase by the number of games that the particular winning combinations of insignia entitled the player, less the one game played.

If at any time a player who had games on the machine desired to cash them in, he could do so and be paid off by the person in charge who would then take the games off of the recording box and machine by pressing the "cancel" button on the recording box.

From our description of a typical machine and the method by which it was operated, it can readily be seen that the only part of the machine which could possibly be termed a "reel with insignia thereon" is the disc or reel with numbers on it used as a recording device. Government's Exhibit 2 is one of those reels and it is this that the government contends satisfies that definitional requirement. We cannot agree.

While it requires no great broadening of the meaning of the word "reel" to include within it the disc or reel with numerals thereon submitted as government's Exhibit 2, the same is not true with reference to a finding that the numerals are "insignia".

4. In the first two rows, from left to right as one faces the machine, the following five insignia appear from top to bottom: the word "Joker" in a rectangular box, a bell, a plum, an orange, three cherries; on the third row the insignia are the same as in the first two except that in place of the cherries at the bottom there is a lemon.

Webster's New International Dictionary of the English Language, second edition, unabridged 1955, at page 1285, defines "insignia" as follows:

"Insignia—(1) Distinguishing marks of authority, office or honor, badges, emblems; as the insignia of royalty or an order.

"(2) Typical and characteristic marks or signs by which anything is distinguished, as the insignia of a trade."

Although it is true that numerals can be used as insignia, for instance where numerals are arranged in a particular combination as part of a trade mark; such as, the familiar Heinz "57", we do not have that here. Here the function of the numerals on the discs or reels was simply to act as a counting device and no more; they were arranged consecutively on the circumference of the discs or reels and merely indicated the number of games on the machine at any particular time.

■ A study of the legislative history of the act indicates very clearly that the definition of a gambling device as found in Sec. 1171 was intentionally made restrictive. The bill as passed by the Senate contained a very broad definition of a gambling device.[5] The House Committee thought the Senate definition of a gambling device was too broad and could be construed to include pinball machines and similar devices:

"* * * because of its intention to exclude pinball machines and similar amusement machines as well as certain machines and devices commonly used, for instance, at carnivals and livestock shows, your committee decided to adopt a definition of gambling device different from the one contained in the Senate bill." [6]

Thus it can be seen that the words chosen were deliberate and for the express purpose of restricting the definition of a gambling device. True, the purpose in so restricting the definition was to exclude pinball machines and certain other devices which the legislators thought were not normally used for gambling purposes, but the legislators did recognize that these machines could come within the Senate definition, and they expressed the intent to exclude them. The method they chose as the exclusionary device was the specific wording of Sec. 1171—a restrictive definition rather than a broad definition with certain machines or mechanical devices specifically excluded. We can only conclude then that Congress in its Sec. 1171(a) (1) definition was aiming at a particular type of gambling device; viz., a so-called "slot-machine" or something akin thereto, which employed a drum or reel with insignia thereon as its distinguishing feature; a feature that set it apart from other types of possible gambling devices, and which if not possessed by another machine or mechanical device would leave it beyond the scope of the act. In so wording the Act, Congress effectively excluded the machines here under consideration from the operation of the Act for we believe that the disc or reel with numerals thereon here under consideration is clearly not comparable to the drum or reel with insignia thereon designated by Congress in the Act as an essential feature of one type of gambling machine.

As to the remote control recorder boxes, they being subassemblies intended to be used solely in connection with the machines here under libel—the government having adduced no proof to the contrary—must also be found not to be gambling devices within the definition under Sec. 1171(a) (3).

5. "Any machine or mechanical device or parts thereof, designed or adapted for gambling or any use by which the user as a result of the application of any element of chance may become entitled to receive, directly or indirectly, anything of value." U.S.Code Congressional Service, 81st Congress, second session, Legislative History, p. 4245.

6. Ibid., pp. 4245, 4246.

The Court of Appeals for the Ninth Circuit, in considering Hannifin v. United States, 248 F.2d 173 (September 3, 1957), a case in point, recently concluded that the statute involved, being penal, should be strictly construed, and that the reel with the numbers thereon, used as a recording device, does not satisfy the definitional requirement of Sec. 1171(a) (1). That case is highly persuasive authority and this court, even if it entertained a contrary view, would feel obliged to follow the interpretation adopted by the distinguished judges of the Ninth Circuit.

Conclusions of Law

1. This court has jurisdiction over the subject matter of this action.

2. The machines and remote control recorder boxes here under libel are not gambling devices within the definition set forth in 15 U.S.C.A. Sec. 1171.

An appropriate order will be entered.