SHEETZ *v.* STATE.

Opinion delivered December 18, 1922.

GAMING—SLOT MACHINE.—A slot machine is a "gambling device," within Crawford & Moses' Dig., §§ 2630, 2637, although the dial indicates what will be received on the immediate play but not what will be received on the next play, there being a chance of greater returns on the next play.

Appeal from Garland Circuit Court; *Scott Wood,* Judge; affirmed.

*Wm. G. Bouic,* for appellant.

*J. S. Utley,* Attorney General, *Elbert Godwin* and *W. T. Hammock,* Assistants, for appellee.

McCULLOCH, C. J.    Appellants have been maintain ing in the lobby of one of the hotels in the city of Hot Springs a slot-machine which deals out mint candy when a nickel is dropped into the slot, and the machine was impounded under a warrant issued by the circuit judge, under authority of the statute which provides that the setting up or exhibition of "any gambling table or gam bling device" shall be unlawful and punishable by fine, and that the circuit court may, on information, issue a warrant to a peace officer "directing in such warrant a search for such gaming tables or devices hereinbefore mentioned or referred to, and directing that, on finding any such, they shall be publicly burned by the officer ex ecuting the warrant."    Crawford & Moses' Digest, §§ 2630-2637.

Upon the hearing of the matter before the court, it was adjudged that the machine in question was a gam bling device, and it was ordered destroyed, in accord ance with the provisions of the statute.

It is admitted that appellants had been maintaining the slot-machine as charged, and the only question at is sue is whether or not it constituted a gambling device within the meaning of the statute.

The machine was exhibited to the trial court at the time of the trial, and the only evidence adduced was that of appellant Sheetz, who testified concerning its operation.    It appears from the description given by this witness that the machine is operated by the player drop ping in a nickel, and there is a dial on the face of the machine which indicates upon each play what will be dealt out from the machine.    The dial indicates upon each play that five cents' worth of mints is to be dealt out to the player, but the machine is so constructed that at irregular intervals it will, in addition to five cents'

worth of mints, deal out premium checks, which may be used at a trading stand near by in the purchase of either mints, gum or cigars. The number of premium checks dealt out is not uniform; sometimes eight are given on a play, and sometimes as many as twenty will be dealt out. The dial in either case, however, indicates before each play what is to be dealt out, whether only five cents' worth of mints, or premium checks in addition. In other words, there is no uncertainty on any play as to what the player will get, and the only uncertainty is as to what will be shown on the dial for the next or any subsequent play.

Appellant Sheetz testified that the scheme was merely a method of distributing to the players the profits earned by not being required to pay clerk hire. He contended that the machine was merely a vending machine in which the profits were, at irregular intervals, paid out to the purchasers.

We are of the opinion that the machine is a gambling device within the meaning of the statute. While there is no element of chance on any particular play, there is a chance as to what the opportunity will be for a subsequent play, and this is sufficient to render the transaction unlawful. It is fairly inferable from the testimony that the player has a preferential right to continue to play as long as he stands at the machine, and that he will have the right to take advantage of any subsequent offer on the dial to deal out premium checks in addition to the five cents' worth of mints. This is undoubtedly an element of chance on what the future play will be, and constitutes gambling.

In Ruling Case Law (vol. 12, p. 729) the following general definition of unlawful slot-machines is given:

"In general, however, any slot-machine, regardless of its description, and although it is a mere automaton which keeps and runs itself, will be deemed to be an unlawful gambling device, where the one who plays the machine stands to win or lose money, trade checks or

prizes, by a chance, or, more broadly, where there is an element of chance in its operation. And where the return to the player is dependent on an element of chance, the generally prevailing opinion seems to be that a slot-machine is a gambling device, even though the player is assured of his money's worth of some commodity, and hence cannot lose. * * * Moreover, the added fact that a slot-machine which delivers an article worth the coin deposited, and sometimes tickets for additional chances, also indicates before each transaction what will be delivered, does not prevent its being within the operation of a statute prohibiting gaming devices.''

Numerous cases are cited in support of this definition.

In the case of *Ferguson* v. *State,* 178 Ind. 568, there was involved the operation of a slot-machine which appears to be identical with the one involved in the present case, and the court held that it was an unlawful gambling device. In disposing of the matter, the court said:

"In the present case, the fact that the machine would indicate the reward before it was played makes no difference. The inducement for each play was the chance that by that play the machine would be set to indicate that it would pay checks on the following play. The thing that attracted the player was the chance that ultimately he would receive something for nothing."

The opinion in this case has been published and the subject annotated in the note in Ann. Cas. 1915-C, p. 173, and in L. R. A. (N. S.) p. 720. In each instance the text of the decision seems to be approved by the annotators.

There is still another case involving, apparently, a machine substantially identical with the one involved in this case, and the court also held in that case that it was an unlawful gambling device. *People* v. *Jenkins,* 138 N. Y. Supp. 449. In that case the court said:

"The element of chance lies in the fact that, upon the turning of the lever and the deposit of the gum and number of checks indicated, there is further indication of how many trade checks, if any, may be obtained upon the dropping of the second nickel. The number of trade checks, however, which can be obtained upon the dropping of the second nickel is only indicated after the first nickel has dropped and the lever turned. Thus, in addition to the gum and the trade checks indicated as the certain receipts upon the dropping of the nickel, is given an option to obtain a package of gum and an uncertain number of trade checks upon the dropping of the second nickel. That this uncertain option has in it such an element of chance as constitutes gambling can hardly be questioned."

The reasoning of the opinions in the cases just cited appeals to us as sound, and our conclusion is, as before stated, that a chance which provides for a final reward to the persistent player, so that he can take advantage of any premiums that may be afforded in addition to what he plays for, is such an element of chance as renders the transaction unlawful.

The judgment of the circuit court is therefore affirmed.