James **HANNIFIN**, Claimant of One Electronic Pointmaker, Also Known as the Joker Machine, Serial Number X550378, Appellant,

v.

**UNITED STATES of America,**
Appellee.

James **HANNIFIN**, Claimant of One Electronic Pointmaker, Also Known as the Bingo Machine, Serial Number X550518, Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 15195.

United States Court of Appeals
Ninth Circuit.

Sept. 3, 1957.

John M. McCarvel, Great Falls, Mont., Edwin V. Magagna, Rock Springs, Wyo., Charles de Y Elkus, San Francisco, Cal., for appellants.

Krest Cyr, U. S. Atty., Butte, Mont., Dale F. Galles, Billings, Mont., Michael J. O'Connell and Frank M. Kerr, Asst. U. S. Attys., Butte, Mont., for appellee.

Before DENMAN, BONE and POPE, Circuit Judges.

DENMAN, Circuit Judge.

Hannifin appeals from two judgments and decrees of condemnation entered by the District Court for the District of Montana, Butte Division, ordering the forfeiture to the United States pursuant to Section 1177, Title 15 U.S.C.A., of two electronic pointmaker machines on the ground that said machines were gambling devices within the meaning of Section 1171, Title 15 U.S.C.A., which had been transported in interstate commerce in violation of Section 1172, Title 15 U.S.C.A. Pursuant to a stipulation by the parties, the cases of both machines (a "Joker" machine and a "Bingo" machine) were tried together, and evidence adduced as to one was applicable to the other.

It is agreed by the parties that the machines were the property of appellant and that appellant had caused their transportation in interstate commerce from Chicago, Illinois, to Butte, Montana.

The question here presented is whether the machines are gambling devices within the meaning of Section 1171(a), Title 15 U.S.C.A., which reads as follows:

"(a)   The term 'gambling device' means—

"(1)   any so-called 'slot machine' or any other machine or mechanical device an essential part of which is a drum or reel with insignia thereon, and (A) which when operated may deliver, as the result of the application of an element of chance, any money or property, or (B) by the operation of which a person may become entitled to receive, as the result of the application of an element of chance, any money or property; or

"(2)   any machine or mechanical device designed and manufactured to operate by means of insertion of a coin, token, or similar object and designed and manufactured so that when operated it may deliver, as the result of the application of an element of chance, any money or property; or

"(3)   any subassembly or essential part intended to be used in connection with any such machine or mechanical device."

The face of each machine states it is an "Electric Pointmaker". Neither machine had a slot or any device for the insertion of money or anything else therein, nor did either deliver therefrom any money or anything else. In no sense can they be deemed a slot machine within § 1171(a).

Each machine consists of two mechanisms. One of the mechanisms determines the elements of chance. It has three columns of insignia, each having five colored designs printed on a stationary glass plate each of which can be illuminated from behind by a light. The player pulls down a lever which starts the illuminating machinery causing the lights to flicker behind all the insignia and finally illuminates one of the five insignia in each of the three columns, the others remaining unlighted. Certain of the combinations of the three illuminated insignia with one or more points in favor of the player. The number of points of each winning combination is

printed on the face of the metal casing of the machines. No portion of this mechanism has a reel or drum with insignia thereon. In this it differs from a slot machine in which the insignia are printed on drums which revolve when the machine is operated.

The other mechanism is a recording device showing the result of each pull of the lever—the points of a combination favorable to the player being recorded, and one point is deducted for each non-point combination. This other device has nothing to do with creating the elements of chance regarding the points. It has a series of drums with numbers thereon *recording* the results of the other mechanism's *determination* of the element of chance. This is sometimes called the totalizer.

The machine neither receives nor delivers money or property and nowhere states that by its operation the player agrees to pay the owner a sum of money per play and the owner agrees to pay the player that sum of money multiplied by the points shown by the point indicator. This, however, is what it was intended to be used for and was used for by the owner and, despite the fact that it is not so stated on its face, such purpose brings the mechanism within the statute, if it otherwise complies with its terms. United States v. Korpan, 354 U.S. 271, 77 S.Ct. 1099, 1 L.Ed.2d 1337.

Nothing could be clearer than that the machine with its two mechanisms is a device primarily to be used as it was used for gambling, the results admittedly being so arranged that the owner will always have more points than the player. Being a very costly and intricate device, giving such profit to the one party over the other, and consisting of over 100 interlocking parts it obviously would not be purchased for family entertainment. Likewise it is clear that the numbers attached to the revolving reels are an essential part of the gambling device for without them there would be no profitable gain to the owner from its operation by the player.

The sole question is whether Congress has so overparticularized the requirement for forfeiture in stating that the forfeitable machine shall be a "mechanical device an essential part of which is a drum or reel with *insignia* thereon", that the instant machine with only figures on its reels is outside its terms. [Emphasis added.]

It has long been held by this court that "a statute whereby a man may be deprived of his personal property by way of a punishment should be construed with strictness; hence those who assume authority to take possession of such property should have clear warrant for [this] action." United States v. Loomis, 9 Cir., 297 F. 359, 360, 361; Ghisolfo v. United States, 9 Cir., 14 F.2d 389, 390. In both of the cases the statute was construed not to warrant the claimed forfeiture. Subsequently the Supreme Court, in holding that the District Court had acted within its powers in setting aside a forfeiture of a Ford Coach under § 204 of the Liquor Repeal and Enforcement Act of August 27, 1935, 27 U.S.C.A. § 40a stated:

"Manifestly, section 204 is a remedial measure. It empowers the courts, exercising sound discretion, to afford relief to innocent parties having interests in condemned property where the claim is reasonable and just. Its primary purpose is not to protect the revenues; but this is proper matter for consideration whenever remission is sought. The section must be liberally construed to carry out the objective. The point to be sought is the intent of the law-making powers. Forfeitures are not favored; they should be enforced only when within both letter and spirit of the law. Farmers' & Mechanics' National Bank v. Dearing, 91 U.S. 29, 33–35, 23 L.Ed. 196. If any claimant has been negligent or in good conscience ought not be relieved, the court should deny his application." United States v. One 1936 Model

Ford Coach, 307 U.S. 219, 226, 59 S.Ct. 861, 864, 83 L.Ed. 1249.

Webster's International Dictionary defines the word "insignia" as follows:

1. Distinguishing marks of authority, office or honor; badges; emblems; as, the *insignia* of royalty or of an order.

2. Typical and characteristic marks or signs by which anything is distinguished; as the *insignia* of a trade.

■ Only by a most liberal construction could these definitions be interpreted to mean a mere number whether Arabic or Roman. Under the rule of strict construction, numbers on the totalizer reel cannot be considered the insignia of Section 1171(a) (1) (B). In this we are in accord with the decision of United States District Judge Parkinson of the Northern District of Indiana in United States v. One Electronic Pointmaker, D.C., 149 F.Supp. 427.

The legislative history also clearly shows that the totalizer reel mechanism with its numbers was not regarded by Congress as a part of the gambling machine covered by the act. This is shown by the colloquy in Congressional Record Senate pages 16,695–16,903 between Senator Taft, Senator Johnson the author of the bill, and others. On page 16,901, col. 2 appears:

"Mr. Taft. I am not so much concerned with slot machines as I am with pari-mutuel machines.

"Mr. Johnson of Colorado. The bill does not touch any other machines. It does not touch pari-mutuel machines. The language in the House bill is narrower.

"Mr. Taft. This is the language to which I was referring: (1) Any so-called slot machine or any other machine or mechanical device an essential part of which is a drum or reel with insignia thereon, * *.

"(B) by the operation of which a person may become entitled to receive, as the result of the application of an element of chance, any money or property.

"There is nothing in that language which refers to any coins. Subsection (1) (A) speaks of coins. Subsection (1) (B) does not refer to coins. It would seem to me, therefore, that a pari-mutuel machine might be fairly considered to be operated with a drum or reel. The bill would cover roulette machines, and it might be broad enough to include pari-mutuel machines. I do not know anything about pari-mutuel racing machines. Some persons in my State who are interested in pari-mutuel racing seem to have become quite concerned about the bill.

"Mr. Johnson of Colorado. Pari-mutuel machines do not use any drum or mechanical devices like those used in slot machines.

"Mr. Taft. It must be some sort of machine."

Senator Holland and Senator Johnson, Page 16,902, Column 2:

"(Mr. Holland) * * * I wish to be very sure that the language does not permit the application of the bill to be a totalizer used in a pari-mutuel racing, which is nothing in the world but a complex computing machine or device. The question which the Senator from Florida wishes to address to the Senator from Colorado at this time is this: It is not true that subdivision (B) in section 1 of the conference bill cannot in any situation apply to a totalizer because of the fact that subdivision (B) includes, as a necessary element, that provision stated in the words 'as the result of the application of an element of chance,' whereas in the use and operation of a totalizer there is and can be no element of chance whatever, the machine being purely a computing machine, which, using the figures and facts which are committed to it, delivers as a result of its computation, fixed and certain results, and there being no element of chance whatever entering into the operation of the computing machine which is referred to generally as a totalizer?

"Mr. Johnson of Colorado. Mr. President, the Senator from Florida has stated the case very clearly. *The bill does not affect in any way any adding machine or any computing machine* of any description or kind. It cannot do so. The sentence which begins with '(B)' or line 20 is part of the whole sentence and is controlled by the language preceding it. There is nothing in the conference reports which in any way affects in the slightest degree any of the paraphernalia used in pari-mutuel seems to me that the description which is given in the bill is clear, and that it is clear that it applies only to slot machines.

\* \* \* \* \* \*

"Mr. Johnson of Colorado. The Senator is correct. *The bill would not in any way affect any* machine, or *any part of a machine,* used for calculating purposes. I say again that the bill would not in any way affect any paraphernalia used in pari-mutuel betting—either repairs, parts, or old machines."

The judgment is reversed and the two Electronic Pointmakers ordered returned to their owners.