UNITED STATES of America,
Plaintiff,

v.

Harry H. BROWN and Club Specialty
Company, Inc., Defendants.

Cr. No. 4405.

United States District Court
N. D. Iowa, W. D.

Nov. 20, 1957.

F. E. Van Alstine, U. S. Atty., Theodore G. Gilinsky, Asst. U. S. Atty., Sioux City, Iowa, for plaintiff.

Joseph E. Green, Richard E. Gorman, Chicago, Ill., for defendants.

GRAVEN, District Judge.

In the above-entitled case the defendants in writing waived trial by jury, which waiver was consented to by the Government and approved by the Court. On the 11th day of November, 1957, at the Federal Court House at Sioux City, Iowa, the above-entitled case came on for trial before the Court. F. E. Van Alstine, United States District Attorney, and Theodore G. Gilinsky, Assistant United States District Attorney, appeared for the Government. Joseph E. Green and Richard E. Gorman appeared as attorneys for the defendants. The defendant Harry H. Brown was present in person. On that date the parties presented their evidence, arguments of counsel were made, and the said case was submitted to the Court and by it taken under advisement. Now, to-wit, on this 20th day of November, 1957, the Court, now being fully advised in the premises, makes and enters the following Findings under Rule 23 of the Federal Rules of Criminal Procedure, 18 U.S.C.

### Special Findings

1. On June 17, 1957, the defendants Harry H. Brown and Club Specialty Company, Inc., were jointly indicted by a Grand Jury for this District in a four Count indictment which charged violation of the Johnson Act (transportation of gambling devices in interstate commerce) and a conspiracy to violate such Act (Title 15 United States Code An-

notated, Sections 1171 through 1177, and Title 18 United States Code, Section 371).

Count I charges that the individual and corporate defendants, together with other named co-conspirators who were not made defendants, between March 1, 1955, and February 15, 1957, conspired to transport gambling devices from Chicago, Illinois, to places in various states other than Illinois. Eight overt acts are specified in this Count.

Count II of the indictment charges a violation of Section 1172 of Title 15 United States Code Annotated, in that the defendants on January 4, 1957, transported four coin operated machines from Chicago to Denison, Iowa.

Count III charges that the defendants violated Section 1173 of Title 15 of the United States Code Annotated by selling, delivering, and shipping the four said machines on that date from Chicago to Denison as a dealer without marking and numbering such devices for individual identification.

Count IV charges that the defendants in violation of Section 1174 of Title 15 of the Code shipped and transported the four machines on the same date from Chicago to Denison in packages without plainly and clearly labeling and marking such packages so that the nature of the articles and the contents of the packages might readily be ascertained on an inspection from the outside of the packages.

The defendants entered pleas of not guilty to all of the four Counts.

2. The evidence presented by the parties consisted of a Stipulation and Supplemental Stipulation and certain Exhibits referred to in said Stipulation, which Exhibits were designated as Exhibits A, B, C, D, and G. The facts set forth in the indictment are acknowledged by the defendants. The only issue in the case is whether the four machines upon which the indictment is based constitute "gambling devices" within the purview of Section 1171, Title 15, United States Code Annotated. If they do, then the defendants are guilty of the offenses charged in the indictment. If they do not, then the defendants are not guilty of those offenses.

3. One of the machines upon which the indictment was based was introduced into evidence as Exhibit "A". It is the same as the other machines in question. That machine in outward appearance resembles an ordinary coin operated gum ball machine. It is rectangular in shape. It is 13 inches high, 6 inches deep, and 7 inches wide. A transparent plastic window 6 inches in width extends across the top of the front of the machine. Through that window a compartment is visible. In this compartment may be placed 2,000 plastic pellets. The pellets are made of opaque plastic and are variously colored. Usually five or six different colored pellets are used in a machine. The pellets are about $\frac{5}{8}$ths of an inch in diameter. All of the pellets are of the same size, shape, and construction. They are sold by the defendants under the name of "Hi-Han Beads". The pellets have a small hole or pierce about $\frac{1}{16}$th of an inch in diameter traversing through them. Small rectangular slips of paper $1\frac{1}{4}$ inches in length folded in accordian pleats are inserted in the holes in the pellets. The slips are printed in various colors. On their face appear printed representations of five playing cards in various combinations showing hands recognized in the game of poker. Immediately below the printed representations is printed the type of poker hand shown on the paper, for example: ".Straight Flush", "Four Of A Kind", "Full House", "Flush", "Straight", "3 Of A Kind", "Two Pair", "One Pair", "Jack-Seven-Hi Bust", "Nine-Eight-Hi Bust", and various other hands known in poker. On the reverse side of each slip is a horoscope or astrology sign giving its Latin name and meaning in English and the dates of the year. The slips cannot be read without removal from the holes in the pellets. A small punch is supplied with each machine for the purpose of removing the slips from the pellets. However, the slips can also be removed from

the pellets by means of a toothpick or match. There is a slot beneath the plastic window heretofore referred to into which a 25 cent piece may be placed by the player. Only 25 cent pieces may be used to play the machine. When such a coin is introduced into the slot the machine's mechanism then releases a rotating handle or lever in the front of the machine which may then be turned a complete revolution by the player, thereby causing one of the pellets to drop into a receptacle in front of the machine from which it can be removed by the player. A card is supplied with each of the machines by means of which the player can ascertain whether he has won or lost. That card contains the following information:

| | |
|---|---|
| Royal Flush | $25.00 |
| Straight Flush | 10.00 |
| Four Of A Kind | 5.00 |
| Full House | 2.00 |
| Flush | 1.00 |
| Straight | 1.00 |
| Three Of A Kind | 1.00 |
| Two Pair | 1.00 |
| One Pair | .50 |

If the printed slip contained in the pellet secured by the player from the receptacle in the front of the machine contains or portrays any of the hands referred to, the slip will be cashed by the operator of the establishment in which the machine is located for the amount stated on the card referred to. No restrictions appear as to the transfer of a slip and it is clear that it is payable to the bearer thereof. If the slip contains none of the hands referred to on the card it is discarded by the player.

4. Section 1171, Title 15 United States Code Annotated, provides:

"As used in this chapter—

"(a) The term 'gambling device' means—

"(1) any so-called 'slot machine' or any other machine or mechanical device an essential part of which is a drum or reel with insignia thereon, and (A) which when operated may deliver, as the result of the application of an element of chance, any money or property, or (B) by the operation of which a person may become entitled to receive, as the result of the application of an element of chance, any money or property; or

"(2) any machine or mechanical device designed and manufactured to operate by means of insertion of a coin, token, or similar object and designed and manufactured so that when operated it may deliver, as the result of the application of an element of chance, any money or property; or

"(3) any subassembly or essential part intended to be used in connection with any such machine or mechanical device.

"(b) * * *

"(c) * * *".

The parties are of the view that paragraph (a) (1) of Section 1171 is not pertinent in the present case. The Court is in accord with that view. That paragraph relates to a machine an essential part of which is a drum or reel with insignia thereon. The machines in question do not have as an essential part of them any drum or reel with insignia thereon. The Government contends that the machines in question do come within the purview of paragraph (a) (2) of Section 1171. The defendants contend that they do not come within the purview of that paragraph.

The defendants do not claim that the machines in question constitute purely amusement devices. They do not claim that the playing of the machine involves any skill.

Paragraph (a) (1) (B) of Section 1171 contains the words "by the operation of which a person may become entitled to receive, as the result of the application of an element of chance, any money or property." Those words do not appear in paragraph (a) (2) of that Section. The House Committee Report on the Act, appearing in Volume 2, 1950 United

States Code Congressional Service at pages 4245, 4246, is as follows:

"Committee Amendments

"Section 1 defines gambling devices. As defined in the bill passed by the Senate, 'gambling devices' mean:

"any machine or mechanical device or parts thereof, designed or adapted for gambling or any use by which the user as result of the application of any element of chance may become entitled to receive, directly or indirectly, anything of value.

"In their testimony before your committee, representatives of the Attorney General stated that this definition could possibly be construed to include pinball machines and similar devices which are played purely for amusement and which do not have pay-off devices which return to the player anything of value. In his communication addressed to the chairman of your committee, dated June 1, 1950, the Attorney General's representative pointed out, however, that it was the intention of the Department of Justice that machines manufactured and used purely for amusement should be excluded from the provisions of this bill.

"In view of this testimony and because of its intention to exclude pinball machines and similar amusement machines as well as certain machines and devices commonly used, for instance, at carnivals, and livestock shows, your committee decided to adopt a definition of gambling devices different from the one contained in the Senate bill. Gambling device is defined by the committee amended as: * * *

"Paragraph (1) of the definition deals with machines and mechanical devices commonly known as slot machines. Slot machines commonly employ drums or reels with insignia thereon which are activated either mechanically or in some other manner, as, for example, by electric power. Slot machines, as defined herein, come within the definition of a gambling device whether or not they are equipped mechanically to deliver any money or property. If they are not equipped to deliver money or property mechanically, the winnings, if any, indicated on the machine are usually paid over the counter by the owner of the premises on which such slot machines are operated, or his employees.

"Paragraph (2) includes machines or mechanical devices other than the afore-mentioned slot machines. It is a characteristic of the machines or mechanical devices so included that they operate by means of insertion of a coin, token, or similar object and that they are designed and manufactured so that when operated they may deliver to the player money or property. * * *"

It is shown by that Report that it was intended by the omission of the words referred to from Section (a) (2) of the Act to exclude from the Act pinball machines and similar amusement devices which did not deliver any money or property but which provided certain intangible rewards to the players of them.

In the Memorandum and Brief submitted by the defendants, on pages 24 and 25, it is stated as follows:

"We have here a machine which is doubtless used for gambling, and is, in common parlance, a gambling machine. It might conceivably and even probably have been both wise and in the public interest had the Congress included this type of a device under the Johnson Act, as it did under the Revenue Law imposing an occupational tax on gaming devices. However, the fact remains that it simply did not do so. It did not do so because, in its conscious effort to prevent the Act's application to certain innocuous devices, it permitted all gaming machines other than 'one arm bandits' to remain outside of the Act unless they *were*

*manufactured to deliver the winnings directly to the player."*

5. One playing one of the machines in question is unable to select any particular pellet or poker hand. Whether he wins or loses on a particular play is determined entirely by chance. Everyone playing the machine receives on every play a pellet containing a slip of paper. The pellet delivered by the machine has no value. A slip of paper which does not portray a certain poker hand has no value. Neither is received by chance and neither would constitute property. However, if the slip of paper delivered by the machine portrays a certain poker hand, then the player has been delivered a printed instrument payable to the bearer thereof for a definite and substantial amount of money which is assignable and transferable by delivery. The moment the machine delivers such an instrument into the receptacle the player has acquired something of substantial value. Such an instrument would constitute property of a character not substantially different from that of a bearer check of the person or concern operating the establishment in which the machine is located. The player acquires the ownership of the instrument the moment it is delivered into the receptacle and his ownership of it continues until he cashes it or transfers it. Such an instrument would constitute property.[1] It was delivered to him by the machine as the result of the application of the element of chance. The fact that an item which constitutes property is readily convertible into another form of property does not cause it to lose its status as property. A person who is the holder of a promissory note or bank draft or check is "entitled to receive" payment thereof, but the fact that he is so "entitled" does not render the note or draft or check a worthless slip of paper lacking in property status. The subsequent act of the person or concern operating the establishment in which the machine is located in cashing the instrument cannot be insulated from the original delivery of the instrument to the player.

6. It is the view of the defendants that Congress by amending paragraph (a) (2) of Section 1171 of the Act to exclude amusement machines providing only intangible rewards to the players of them opened the gate to all gambling devices of the type herein involved. Such a construction of the Act would not only render largely nugatory the provisions of Section (a) (2) of Section 1171 but would also in practical effect render largely nugatory the provisions of paragraph (a) (1) of the Act for those seeking to achieve the objectives attainable by the use of regular slot machines could achieve those same objectives by using machines similar to those involved in this case. It is the view, finding, and holding of the Court that the machines in question did deliver property as the result of the application of the element of chance and that they come within the purview of paragraph (a) (2) of Section 1171.

### General Findings

1. The Court finds that the defendant Harry H. Brown is guilty of the offense with which he is charged in Count I of the indictment.

2. The Court finds that the defendant Club Specialty Company, Inc., is guilty of the offense with which it is charged in Count I of the indictment.

3. The Court finds that the defendant Harry H. Brown is guilty of the offense with which he is charged in Count II of the indictment.

4. The Court finds that the defendant Club Specialty Company, Inc., is guilty of the offense with which it is charged in Count II of the indictment.

---

1. " 'Property' is a nomen generalissimum and extends to every species of valuable right and interest * * *." Hoyd v. Citizens Bank of Albany Co., 6 Cir., 1937, 89 F.2d 105, 107. See also Lucas v. Schneider, 6 Cir., 1931, 47 F.2d 1006, 1008; In re Brown, D.C.1938, 21 F.Supp. 935, 937; and Morgenthau v. Fidelity & Deposit Co. of Maryland, 1937, 68 App.D.C. 163, 94 F.2d 632.

126

5. The Court finds that the defendant Harry H. Brown is guilty of the offense with which he is charged in Count III of the indictment.

6. The Court finds that the defendant Club Specialty Company, Inc., is guilty of the offense with which it is charged in Count III of the indictment.

7. The Court finds that the defendant Harry H. Brown is guilty of the offense with which he is charged in Count IV of the indictment.

8. The Court finds that the defendant Club Specialty Company, Inc., is guilty of the offense with which it is charged in Count IV of the indictment.