**UNITED STATES of America**

v.

**11 STAR–PACK CIGARETTE MER-
CHANDISER MACHINES.**

No. 34 of 1963.

United States District Court
E. D. Pennsylvania.

Jan. 3, 1966.

Drew J. T. O'Keefe, Philadelphia, Pa.,
by: Francis R. Crumlish, for libelant.

Harold B. Lipsius, Matthew S. Biron,
Philadelphia, Pa., for respondent.

LUONGO, District Judge.

The United States has proceeded by a libel of seizure and forfeiture under 15 U.S.C. § 1171 et seq., against eleven Star-Pack Cigarette Merchandiser Machines, alleged to be gambling devices as therein defined. By stipulation (document No. 5) the libel was amended to include one hundred and one additional such machines. At the hearing, two of the defendant machines were produced and it was stipulated that those two machines are substantially identical to all of the defendant devices and that the court's decision as to one would be applicable to all of the defendant devices.

Upon pleadings and proof, including written stipulations (document No. 6) entered into prior to the hearing and oral stipulations entered into at the hearing, I find the following

## FACTS

1. The United States of America has instituted a libel action, alleging Star-Pack Cigarette Merchandiser Machines are gambling devices as defined in Title 15, Section 1171 of the United States Code.

2. A Star-Pack unit is a metal cabinet, 2' x 1' x 1', which has been designed by claimant with the intent to stimulate sales of its cigarette vending machines, but which can be adapted to fit on top of any vending machine.

3. On the front of each Star-Pack unit, there is a painted glass plate with painted color pictures of eight packs of cigarettes, Viceroy, Winston, Parliament, L. & M., Philip Morris, Pall Mall, Old Gold, Marlboro, and also, a picture of a simulated pack of cigarettes called "Star-Pack."

4. The defendant Star-Pack Cigarette Merchandiser Machines were manufactured and designed to operate so that when coins are inserted into a cigarette machine to which the defendant device is attached, the cigarette machine will dispense a package of cigarettes, then the lights in the defendant device will flash in irregular sequence. If the light remains lit under the Star-Pack picture, the cigarette machine will dispense a free package of cigarettes. Whether or not the light will remain lit under the Star-Pack picture and cause the cigarette machine to dispense a free package of cigarettes is determined by the internal mechanism of the defendant device by a process of random selection. Adjustments may be made on the defendant device to vary both the number of free packages of cigarettes to be delivered as well as the frequency of the occasions on which free packages of cigarettes will be delivered.

5. The defendant Star-Pack Merchandiser Machines were manufactured at the specific direction of David Rosen, Inc. by Midway Manufacturing Corporation, 10136 Pacific Avenue, Franklin Park, Illinois.

6. All of the defendant Star-Pack Cigarette Merchandiser Machines were transported in interstate commerce from Franklin Park, Illinois to Philadelphia, Pennsylvania during the month of June, 1963, and were received at Philadelphia by David Rosen, Inc.

7. All of the defendant Star-Pack Cigarette Merchandiser Machines were seized by or were surrendered to the custody of the United States Marshal for the Eastern District of Pennsylvania on October 17, 31 and November 4, 1963, pursuant to a seizure warrant duly issued by United States Commissioner Edward W. Furia on October 16, 1963.

8. At all times pertinent to this proceeding the claimant, David Rosen, Inc., was not registered with the Attorney General of the United States as a person engaged in the business of manufacturing gambling devices, or as a person engaged in the business of repairing, reconditioning, buying, selling, leasing, using, or making available for use by others any gambling device.

9. At the time of manufacture and at the time of shipment of the defendant devices from Franklin Park, Illinois to Philadelphia, Pennsylvania, each defendant device did not have permanently affixed thereto, so as to be clearly visible,

any number, the name and/or trade name of the manufacturer and the date of manufacture of the defendant device.

10. The total value of the defendant Star-Pack Cigarette Merchandiser Machines exceeds $2,500.

11. The defendant devices can be adapted to any coin operated dispensing machine, either mechanical or electrical.

12. The defendant devices are designed and manufactured solely for attachment to coin operated dispensing machines to cause such machines to deliver free merchandise by the application of the element of chance, which element of chance is determined by the operation of the defendant devices.

### CONCLUSIONS OF LAW

1. The court has jurisdiction of this civil forfeiture proceeding pursuant to the provisions of 15 U.S.C. §§ 1171 et seq.

2. Libelant is the United States of America, the sovereign power.

3. These are proceedings in rem, the defendants being one hundred and twelve Star-Pack Merchandiser Machines.

4. The defendant machines are devices designed and manufactured primarily for use in connection with gambling and by the operation of which a person may become entitled to receive property as the result of the application of an element of chance.

5. The defendant devices were transported in interstate commerce in violation of the laws of the United States, specifically the provisions of 15 U.S.C. § 1172.

6. The defendant devices are subject to forfeiture by the United States of America under the provisions of 15 U.S.C. § 1177.

### DISCUSSION

The question in this forfeiture proceeding is whether the Star-Pack unit is a gambling device under the definition contained in 15 U.S.C. § 1171, as amended in 1962. The portion of the definition pertinent here is:

"§ 1171. Definitions

As used in this chapter—

(a) The term 'gambling device' means—

 \*  \*  \*  \*  \*  \*

(2) any other machine or mechanical device (including, but not limited to, roulette wheels and similar devices) designed and manufactured primarily for use in connection with gambling, and (A) which when operated may deliver, as the result of the application of an element of chance, any money or property, or (B) by the operation of which a person may become entitled to receive, as the result of the application of an element of chance, any money or property; \* \* \*."

The device in question is designed to be attached to a regular cigarette vending machine. Its function is to activate, by the element of chance, the cigarette vending machine to deliver a free package of cigarettes in addition to the one which the customer has purchased. Thus, the necessary elements of consideration (patronizing the machine), prize (free package of cigarettes), and chance [1] are present and the definition of gambling device will be satisfied if this device was designed and manufactured *primarily for use in connection with gambling.*

Claimant argues that the Star-Pack unit was not designed primarily for use in connection with gambling, but rather was designed to stimulate the sales of claimant's cigarette vending machines. This argument, in my view, misses the point in that it confuses cause and effect, mistakes the lure for the quarry. The quarry here is increased sales, the lure is the prospect of a free

1. See United States v. McKenna, 149 F. 252 (W.D.N.Y.1906); United States v. Jefferson, 134 F. 299 (C.C.W.D.Ky. 1905); Boynton v. Mills Novelty Co., 60 F.2d 125 (10th Cir. 1932); Boynton v. Ellis, 57 F.2d 665 (10th Cir. 1932); Green v. Hart, 41 F.2d 855 (D.Conn. 1930).

package of cigarettes.[2] The free package of cigarettes is to be awarded by the element of chance. The sole function of the Star-Pack unit is to furnish the element of chance, it has no utility other than to determine whether free merchandise will be delivered to the player. The fact that the gambling element furnished by this device was intended, by this claimant, as the lure with which to attract more business in no way alters the character of the device. The Star-Pack unit was designed solely for use in connection with gambling and is, therefore, subject to forfeiture.[3]

Claimant insists, however, that the legislative history of the 1962 amendment makes it clear that this type of device was not within the contemplation of Congress. The quick answer to that is that the language of the statute is clear and requires no explanation. As was stated in Commissioner v. Ridgway's Estate, 291 F.2d 257 (3d Cir. 1961), at page 260:

> "We should not resort to legislative history where, as here, the language of the statute is so clear as to require no construction. * * * Unlike other extrinsic aids to statutory construction, legislative history is to be used to solve and not create ambiguity."

But even if the language here were ambiguous and required resort to legislative history for proper interpretation, claimant would yet fail, for it appears from a review of the legislative history of the Gambling Devices Act of 1962, that the purpose of the legislation was to lessen the revenue accruing to crime syndicates, to correct serious inadequacies of earlier legislation and to cover new gambling machines developed during the eleven years' existence of the prior legislation. See 1962 U.S.Code Cong. & Ad.News, pp. 3809-25. Viewed against the legislative history, the Star-Pack device is not nearly as innocuous or single-purposed as claimant would have the court believe. Claimant emphasizes:

(a) that the unit delivers only a single free package of cigarettes, but the evidence is that the device can be adjusted to deliver *any* number of free packages of cigarettes that is desired;

(b) that the unit is designed to be attached only to the particular cigarette vending machine (Rowe) of which claimant is the distributor, but the evidence is that it can be made to attach to *any* vending machine, mechanical or electrical, dispensing cigarettes or any other merchandise; and

(c) that the purchaser of the cigarettes from the vending machine gets the opportunity to win a free package for the *same* price as that paid for the cigarettes alone and he is, therefore, paying nothing for the privilege of gambling, but the evidence is that the vending machine can be adjusted to operate upon the insertion of any predetermined number of coins, that it would require only minor adjustments in the vending machine itself to change the price of the cigarettes to include a premium for the privilege of gambling.

---

2. Claimant contended that the flashing of the lights on the device was also intended to give pleasure to patrons of the vending machines. That contention strains credulity and I reject it. I consider the flashing of lights to have no significance other than to give the patron the opportunity to follow the erratic course of the flight of chance.

3. Claimant has cited several cases (United States v. Three Gambling Devices, 161 F.Supp. 5 (W.D.Pa.1957), aff'd per curiam, 254 F.2d 395 (3d Cir. 1958); United States v. One Electronic Point-maker, 149 F.Supp. 427 (N.D.Ind.1957); United States v. Five Gambling Devices, 252 F.2d 210 (7th Cir. 1958); Hannifin v. United States, 248 F.2d 173 (9th Cir. 1957)) in support of its contention that the defendant device does not come within the definition. Those cases afford no help since all arose prior to the 1962 amendment, under a definition whose wording was characterized in one of the cited cases (Hannifin v. United States, supra.) as "overparticularized." The amended definition suffers from no such infirmity.

I do not mean to suggest by this last mentioned point that any premium need be charged for the privilege of gambling in order to satisfy the requirement of consideration because it is clear that there is sufficient consideration in the fact that the customer gives his patronage to the vending machine to which the device is attached. This factor was only mentioned to demonstrate that the *device*, with little or no adjustment, is capable of a profit from gambling alone apart from any profit which may be realized from increased sales from packages of cigarettes or increased sales of a particular brand of vending machine, and is, therefore, capable of contributing revenue to crime syndicates, the very thing which Congress sought to lessen.

An appropriate Order of Forfeiture and Destruction will be entered.