**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Johnnie WILSON, Defendant-Appellant.**

**No. 72–1213.**

United States Court of Appeals, Ninth Circuit.

Feb. 13, 1973.

Rehearing Denied March 13, 1973.

Joseph P. Hennessey (argued), Billings, Mont., for defendant-appellant.

Keith L. Burrowes, Asst. U. S. Atty. (argued), Otis L. Packwood, U. S. Atty., Billings, Mont., for plaintiff-appellee.

5. Possession of goods, stolen from an interstate shipment.

Before BARNES and BROWNING, Circuit Judges, and WOLLENBERG,* District Judge.

PER CURIAM:

Appellant was convicted of transporting two "gambling devices" (coin-operated "Bonanza" and "bead ball" machines) in interstate commerce in violation of 15 U.S.C. § 1172. The judgment is affirmed for the reasons stated in the district court's findings of fact, conclusions of law, and memorandum opinion reported at 355 F.Supp. 1394.

Dissenting in part, Judge Barnes concludes that the "Bonanza" machine, equipped with the set of coupons constituting Government Exhibit 1, is not a "gambling device" as defined in 15 U.S.C. § 1171. This conclusion rests entirely on the premises that no "element of chance" is involved because the player sees exactly what he is going to get before he invests his 25 cents.

Exhibit 1 consists of 1500 coupons. Of these, 1386 are "merchandise" coupons good for 50 cents credit on a purchase of $10.00 or more at a store other than that in which the "Bonanza" machine was placed. The remaining 114 are "dollar value" coupons redeemable immediately for from 50 cents to $31.00 in cash.

Since the minimum "dollar value" coupon could be exchanged immediately for 50 cents cash, it can be safely assumed that when a player began to play, the coupon he saw, and would receive for his 25 cents, was a "merchandise" coupon good for 50 cents credit on a purchase of $10.00 or more in some other store. However, he would *also* get a look at the *next* coupon, which, for another 25 cents, might entitle him to as much as $31.00 cash. The district court could reasonably conclude that most players put their first 25 cents in the "Bonanza" machine because of the "element of chance" that the next coupon, thus exposed, would entitle them, for another 25 cents, to a guaranteed payment of 50 cents to $31.00.

The ordinary "slot machine" could be readily converted to pay off only if the player dropped in a second coin after the rollers stopped. Since no one would leave a winning combination on the machine in such circumstances, the player would always know exactly what he was going to get when he put in each of the two coins: nothing the first time; and whatever the showing combination entitled him to the second time. Yet clearly playing such a "slot machine" would involve an "element of chance." This would be so even though the non-paying combinations on such a quarter slot machine gave the player a coupon entitling him to 50 cents credit on a $10.00 purchase from some other local merchant.

Judge Barnes agrees that Marvin v. Sloan, 77 Mont. 174, 250 P. 443 (1926), and Ferguson v. State, 178 Ind. 568, 99 N.E. 806 (1912), "require the result expressed by the district court," but finds these decisions inapplicable because of a difference in the definition of "gambling devices" in the state statutes involved in these cases. The cases cannot be distinguished on this ground. Both turned on whether playing a device that allowed the player to see what he was going to get before he deposited his money involved an "element of chance" —exactly the question presented here. Both courts answered in the affirmative. As the Supreme Court of Indiana said in Ferguson v. State, 99 N.E. at 807:

". . . the fact that the machine would indicate the reward before it was played makes no difference. The inducement for each play was the chance that by that play the machine would be set to indicate that it would pay checks on the following play. The thing that attracted the player was the chance that ultimately he would receive something for nothing."

* Honorable Albert C. Wollenberg, United States District Judge, Northern District of California, sitting by designation.

This is the overwhelming weight of authority. Appellant cites no cases to the contrary. Judge Barnes cites none.

United States v. Five Gambling Devices, 252 F.2d 210 (7th Cir. 1958), and Hannifin v. United States, 248 F.2d 173 (9th Cir. 1957), concern the meaning of the term "insignia," not "element of chance."

Affirmed.

BARNES, Circuit Judge (concurring and dissenting):

Appellant was prosecuted in eleven substantive counts of a violation of 15 U.S.C. § 1172.[1] All counts were dismissed during the trial on motion of the government except one and nine. Jury was waived and appellant was convicted on each count. He appeals.

Count One charged the transportation in interstate commerce "of four bead-ball machines." (Ex. 7). Count Nine charged the transportation in interstate commerce "of two Bonanza machines." (Ex. 8).

I

Briefly, the "bead-balls" are dispensed by the Victor Vendor (Ex. 7) when the Victor machine is played by the insertion of a coin (quarter). Each bead-ball contains a "number" on a paper slip in its center, which is compared with the numbers on a placard inside the glass front of the machine to determine if the person receiving the number has won. If he does, he is paid the amount listed on the placard. (Findings IV and V, Ct.Tr., p. 57)

Thus, the element of chance is clearly present in the Victor machine. It is nothing more than a sophisticated mechanical punch board. I would affirm the conviction holding that its shipment across the particular states herein involved constituted a violation of 15 U.S. C. § 1172. United States v. Brown, 156 F.Supp. 121 (N.D.Iowa 1957).

II

I come to the contrary conclusion with respect to Exhibit 8—the Bonanza machine.

The trial court's Findings of Fact XIII is as follows:

"Government Exhibit 8, the 'Bonanza' machine, was operated by placing a quarter in the machine, which activated a mechanism to dispense a coupon. If properly placed in the machine, this coupon was visible through a glass viewer in the top of the machine prior to the insertion of the quarter. After the ticket has been dispensed, the next ticket to be dispensed (upon the insertion of another quarter into the machine), is then in view behind the glass viewer on the top of the machine cabinet." (Ct.Tr., p. 58).

I accept that finding as accurate. I likewise accept Findings of Fact XIV and XV.[2] Yet I find therein no support for the District Court's Conclusions of Law 4,[3] that an untestified to "intent"

---

1. 15 U.S.C. § 1172 prohibits (with exceptions) the transportation of gambling devices across state lines. 15 U.S.C. § 1171 defines "gambling device" as any slot or other machine, which entitles or delivers to a player "money or property", "*as the result of the application of an element of chance.*" (Emphasis added)

2. "A person obtaining a dollar value coupon from Government Exhibit 8 was paid in cash in the amount listed on the particular coupon by the establishment where the machine was located."
   (Findings of Fact XIV, Ct., p. 58)
   "The coupons contained in Government Exhibit 1 were printed by employees of the defendant, under the direction of the defendant, contained dollar value coupons at periodic intervals throughout each bundle of 1,500 coupons, which totalled $238.00 for each bundle of 1,500 coupons and were designed, printed, and intended to be used in a 'Bonanza' machine exactly like Government Exhibit 8."
   (Findings of Fact XV, Ct. Tr., p. 59)

3. "The 'Bonanza' machine, as designed and *intended to be used*, constituted a gambling device when shipped in violation of Title 15 U.S.C. § 1172." (Emphasis added.)
   (Conclusion of Law No. 4, Ct. Tr., p. 59)

changed a non-gambling device into a prohibited gambling device.

The key language of the definition of what constitutes a "gambling device" under 15 U.S.C. § 1172 is the delivery *when operated,* of money or property *"as the result of the application of an element of chance."* 15 U.S.C. § 1171(a).

When the player can look into the Bonanza machine, and see *before* he deposits his quarter *what he will receive, i. e.,* 50 cents or more credit on a purchase of $10.00 worth of goods, he does not get anything by an element of chance, when he operates it. It is undisputed a player receives exactly what he pays his quarter *for.*

Not all the exhibits in this case were originally forwarded to this court. By stipulation between the parties in open court it was agreed that Exhibit 1 (the tickets shipped by the defendant across state line) should be forwarded to this court. I have examined them, and their format is described in the margin.[4]

Despite the failure of proof of any element of chance in the Bonanza machine, the trial court relied (in its written opinion) on two cases, Marvin v. Sloan, 77 Mont. 174, 250 P. 443 (1926) and Ferguson v. State, 178 Ind. 568, 99 N.E. 806 (1912); stating that in those cases "the courts found that similar machines were gambling devices." They were, however, decided under the respective states' definition of gambling devices. We agree with the trial judge that the two cases cited support, and would here, require the result expressed by the district court, *provided* the definition of "gambling devices" was the same in those states as in the federal statute. But they were not.[5]

---

4. Plaintiff's Exhibit 1 consisted of one package of five flat "rolls" of printed tickets, each ticket in each "roll" joined to another in continuous sequence. Each flat roll was numbered differently, as follows: A 2562 to A 2567, inclusive, and each contained approximately 1,000 tickets.

Each 1,000 (N 1500) coupons carried the same number (shown above) on its right side; and on the left: "Void for other than purposes intended or where prohibited, taxed or restricted."

Most coupons have on the printed legend on their face at the top, "This coupon good for", and at the bottom there was *printed*: "Good on regular price only; sale merchandise excluded—One coupon per purchase." Most coupons then had *mimeographed* on their face in the center below the top printing the following: "Fifty Cents to apply on purchase of Ten Dollars or More. Valid in listed stores." Some coupons had *mimeographed* on their faces, in the center "$1.00 value", or some larger sum.

None of the five flat "rolls in Ex. 1 had printing on the back of the tickets." They could not have been placed upside down without either placing all that way, or breaking the continuous line of tickets.

5. In some states the statutes are similar; but most state statutes, particularly in the earlier cases, differ markedly from the Federal statute. Many states have no definition of what constitutes a gambling device. Several prohibit "gambling" or "lotteries" or "gambling devices".

In Marvin v. Sloan, *supra,* the court said, "Undoubtedly the machine in question is a gambling device within the contemplation of section 11159, *supra.*"

The statute involved was Montana R.C. 1921, § 11159–60, which prohibited "any slot machine, punch board or other similar machine or device." In Ferguson v. State, *supra,* the statute was Indiana's § 2474 of Burns Ann.St. of 1908. That statute prohibited "the keeping of devices for gaming." (99 N.E. p. 806). *See also* State v. McTeer, 129 Tenn. 535, 167 S.W. 121 (1914); Painter v. State, 163 Tenn. 627, 45 S.W.2d 46 (1932); Lang v. Merwin, 99 Me. 486, 59 A. 1021 (1905); City of Moberly v. Deskin, 169 Mo.App. 672, 155 S.W. 842 (Kan. City App.1913); Comm. v. Gritten, 180 Ky. 446, 202 S.W. 884 (1918); State v. Johnson, 15 Okl. Cr. 460, 177 P. 926 (1919); State v. Ellis, 200 Iowa 1228, 206 N.W. 105 (1925); Zaft v. Milton, 96 N.J.Eq. 576, 126 A. 29 (Ch.1924); Cagle v. State, 18 Ala.App. 553, 93 So. 206 (1922); Sheetz v. State, 156 Ark. 255, 245 S.W. 815 (1922); Brockett v. State, 33 Ga.App. 57, 125 S.E. 513 (1924); Tonahill v. Molony, 156 La. 753, 101 So. 130 (1924); People ex rel. Verchereau v. Jenkins, 153 App.Div. 512, 138 N.Y.S. 449 (N.Y.A.D. 1912).

The basic theory of these cases is well expressed in State v. Googin, 117 Me. 102, 102 A. 970, 971 (1918).

I agree each play is a complete act, and that it *may* be only preliminary to a future play. It also *may not*. If it is *not*, can the machine, without a second play, be classified as a gambling device, when no "application of an element of chance" exists, either as to the first player, or any possible next or second player?

If a machine is so constructed as to eliminate "an application of an element of chance", then it does not and cannot violate the federal statute upon which this prosecution is based. If the statute so fails, it is not our duty to enlarge its meaning by judicial fiat, nor to strain an interpretation of plain language on moral grounds; that is a matter for Congress to consider.

To say that the machine "allures" the player into continuing to play as does the court in City of Moberly v. Deskin, 169 Mo.App. 672, 155 S.W. 842 (Kan. City App.1913), seems to me to beg the point at issue. Obviously most humans would be pleased to receive "something for nothing". This one cannot do with certainty at the Bonanza machine. If one plays long enough, he loses. And

each time he plays he knows precisely what he is paying and what he is getting. There is no illegality in a machine selling $10.00 worth of merchandise or $100 cash for 25 cents; provided both parties are willing and the price to be paid and the amount of value to be delivered are plainly and unequivocally designated and described before the contract is consummated by the "play" of the machine.

### III—Intent

I do not here decide whether the Bonanza machine *could* be operated as a gambling device, with the use of different equipment than that here furnished, or if used in a different manner. Such different operation might well be a violation of Arizona State, County, or City law. But it does not, of necessity, or beyond a reasonable doubt, establish that the Bonanza machine, as herein played, violated § 1172 of 15 U.S.C.

Appellee urges that:

"The fact that either the Victor Vendor or the 'Bonanza' could have been used in a legal manner does not change their character, *determined by*

---

"But respondent says the gum machine involves no element of chance; that each play of the machine is a completed transaction, and shows precisely what the player is to receive, and what the machine is to give; that there is no contract, expressed or implied, that the player shall have a second or third play to avail himself of the opportunity of obtaining the trade checks; that, this being so, there is no element of chance. *But the fallacy of this contention is found in the assumption that the machine deals with the individual, whereas by its method of operation, of necessity, it deals with the public. . . . If the player does not win the first time, he knows he can repeat till he does win.* It is therefore quite apparent that it is the prize, and not the gum, that invites the public. Accordingly, while each play is a completed act, *it may be only preliminary to the future play*, by the same person, which will bring forth the coveted prize, the chance in this operation being, not in the visible play . . . but in the invisible play by which the machine may turn up a

visible prize to be captured on the next play. If a play turns up no premium, neither party loses. If it does turn up a premium, then the machine loses *on that particular play*." (Emphasis added.)

This presents an interesting study in human psychology, and perhaps, semantics, but does it establish a violation of the Federal Criminal Statute "as the result of the application of an element of chance?"

*First*, we fail to see why the person first using the machine is an "individual", as opposed to a member of "the public." Secondly, the statement asserts, "If the player does not win the first time, he knows he can repeat until he does win." This is simply not true here. If he "played" every ticket in this particular machine he would "invest" (if 1,500 tickets were in the machine) $375.00, and would receive a certain "pay off" of $238.00 (Plaintiff's Ex. 1 and R.T. 64, ll. 10–19), and no more. (From 1,000 tickets in a machine, the play would cost $250.00, and the payoff be $176.00 (R.T. 65)).

*intent* on the date of shipment. United States v. Three (3) Trade Boosters, M.D.Pa. (1955) 135 F.Supp. 24." (Appellee's Brief, p. 8)

Apparently the trial court approved this theory, and rested its decision thereon, holding in its opinion that the shipping of the Victor machines took place "with the intent that they be used as gambling devices." (Ct.Tr., p. 65). I do not believe my brothers can find such an intent on a bare record. No such intent is mentioned as to the "Bonanza" machine in the Opinion (Ct.Tr., p. 65) dated October 18, 1971, but reference is made to *both* machines in the Court's Conclusions of Law 2 and 4 (Ct. Tr., p. 59). And I recognize such latter conclusions are binding; if supported by the evidence.

I asked counsel at oral argument what proof of intent there was in the record. I received no answer from the government. I have, therefore, gone carefully over the record. I find a lack of proof of intent to violate § 1172 in anything defendant or any witness, said or did.[6]

I do not find in the record any direct or circumstantial factual indication of an intent on the defendant's part to ship the Bonanza for use as a gambling machine or that it was to be used with other or different equipment so as to result in a gambling device.[7]

I find no evidence in the record from which such intent may be inferred, so as to transmute a non-gambling device into a gambling device, within the statutory definition. There is not the slightest evidence that the defendant had knowledge that the Bonanza had been or was being used with its tickets inserted "upside down". In this criminal case, there is simply not enough evidence to support beyond a reasonable doubt, the theory of an inferred intent. The malefactor in this case, if he exists, is the operator who placed the tickets in the machine upside down, so the player could not see what he was to receive.

## IV

I have thus far discussed state cases.

I have found no federal cases, interpreting, as have the majority, the precise language with which we are here concerned. The Slot Machine Act of 1951 contained several loopholes, caused by the failure of Congress to achieve its purpose when it failed to accurately define what constituted "a gambling device". Congress did not seek to eliminate gambling *per se*. For example, it sought to write the statute around the

---

6. The stipulation (Cl. Tr. pp. 34 and 35) does not refer to intent. Messrs. Donkel, Salazar, Bingham and Larson testified only as to the Victor Vendor.

   Witness Florian testified he "played" the "Bonanza" machine (then known to him as the Desert Showcase Merchant Machine), at the Talk of the Town Tavern, without seeing what he was getting, because "the tickets are upside down. All I seen is a blank piece of paper." He then arrested the local operator *under a City of Phoenix ordinance*.

   Witness Bratcher had several Bonanza machines, but never put the tickets in upside down. (R.T. 44). Without objection, this witness testified the Department of Public Safety of the State of Arizona had ruled the Bonanza legal to operate.

   Mr. Estes testified only with respect to the Victor Vendor (Ex. 7).

   Mr. Raszler, the addressograph operator, told how he handled the printed tickets, placing on them the redeemable amounts.

He had never seen tickets placed in the Bonanza upside down. (R.T. 68, 11. 14–17).

   This was the government's case. Nowhere appears a single word as to defendant's intent to use the machines for gambling purposes.

   The defendant called Officer Florian as a hostile witness. He did not touch upon intent. The defendant also testified. He denied any intent to use, or to have the machines be used, for gambling. (R.T., p. 85, 11. 1 to 19; p. 87, 11. 15–16). Mr. Wilson also testified he had sought and received an opinion on January 20, 1965, from the United States Treasury Department that the Bonanza machine was not taxable as a gambling machine. That opinion was later revoked.

7. Compare the facts in United States v. Kokin, 365 F.2d 595 (3rd Cir. 1966), cert. den. 385 U.S. 987, 87 S.Ct. 597, 17 L.Ed.2d 448.

pari-mutuel machine. This concern is vividly portrayed in the House Committee Report, H.R.Rep.No.1828, 87th Cong., 2d Sess. 6 (1962), which appears at 1962 U.S.Code Cong. & Admin.News 3809. (*See* Lion Manufacturing Corp. v. Kennedy, 117 U.S.App.D.C. 367, 330 F.2d 833, 835 (1964), and particularly Note 5, p. 837, with its reference to the heavy burden of proof placed on the government by the looseness of the statutory language, with its resulting "protection for the individual".)

The case of United States v. Branson Distributing Company, 398 F.2d 929 (6th Cir. 1968) at p. 943, supplies us with advice as to how intent is to be determined, but deals with machines clearly depending mostly on chance and a little on skill. The federal case closest to ours (but still different) seems to be United States v. 11 Star-Pack Cigarette Merchandiser Machines, 248 F.Supp. 933 (E.D.Penn.1966). It dealt with 15 U.S. C. § 1171, et seq., but with a differently operated machine, which was "activate(d) by [the] element of chance" whether an additional *free* package of cigarettes was delivered. See also United States v. Two Coin-Operated Pinball Machines, 241 F.Supp. 57 (W.D.Kentucky 1965).

In United States v. Five Gambling Devices, 252 F.2d 210 (7th Cir. 1958) (one of the few cases of this type reaching the Circuit Courts), the Seventh Circuit reversed the District Court's decision that the machine therein described was "a gambling device" and hence subject to forfeiture. It was not (said Judge Hastings) under 15 U.S.C. § 1171(a)(1), because the machine did not come within the specific language of that statute; i. e., it did not have "*a drum or reel with insignia thereon*" (emphasis is the court's) as required by the statute. (*id.*, p. 211) It had been conceded that "the person who operates the machine may become entitled to receive money or property as the result of the application of chance." (*id.*, p. 212) Yet the court held "with regret" (*id.*, p.

213) that the animals shown (monkey, cat, etc.), were not "insignia"—hence "the trial court erred in holding that the five machines in question are gambling devices within the meaning of 15 U.S.C. § 1171(a)(1)." (*id.*, p. 213)

"The Johnson Act" (along with its successor now constituting § 1171, et seq. of 15 U.S.C.) being penal in character must be strictly construed. United States v. One Electronic Pointmaker, 149 F.Supp. 427, 429 (N.D.Ind.1957) and cited with approval, United States v. Five Gambling Devices, *supra*.

The only case we have found in this Circuit dealing with §§ 1171 and 1172 is cited with approval in United States v. Five Gambling Devices, *supra*, 252 F.2d at 213. Both cases espouse the strict rule:

"[A] statute whereby a man may be deprived of his personal property by way of a punishment should be construed with strictness; hence those who assume authority to take possession of such property should have clear warrant for [this] action."

Hannifin v. United States, 248 F.2d 173, 175 (9th Cir. 1957). In *Hannifin*, it was also stated:

"Nothing could be clearer than that the machine with its two mechanisms is a device primarily to be used as it was used for gambling, the results admittedly being so arranged that the owner will always have more points than the player. Being a very costly and intricate device, giving such profit to the one party over the other, and consisting of over 100 interlocking parts it obviously would not be purchased for family entertainment. Likewise it is clear that the numbers attached to the revolving reels are an essential part of the gambling device for without them there would be no profitable gain to the owner from its operation by the player."

Despite this, this Court held in *Hannifin*, that a device "primarily to be used . . . for gambling", does not fall within the prohibition of the statute be-

cause *"Congress has so overparticularized the requirement for forfeiture"* that the machine there involved "is outside its (the statute's) terms." (*id.*, p. 175).

I would hold that same situation here exists. The judgment should be reversed as to Count Nine, with the Bonanza machine and equipment ordered returned to its owner.