COMMISSIONER OF INTERNAL REV-
ENUE, Petitioner,

v.

Hyman H. BERGHASH and Rose
Berghash, Respondents.

COMMISSIONER OF INTERNAL REV-
ENUE, Petitioner,

v.

DELAVAN–BAILEY DRUG CO., Inc.,
Respondent.

Nos. 247, 248, Dockets 29968, 29969.

United States Court of Appeals
Second Circuit.

Argued March 31, 1966.

Decided June 1, 1966.

Fred R. Becker, Department of Justice, Washington, D. C. (Richard M. Roberts, Acting Asst. Atty. Gen., Meyer Rothwacks, Harry Baum, Department of Justice, Washington, D. C., on the brief), for petitioner.

Robert R. Barrett, Buffalo, N. Y. (Hodgson, Russ, Andrews, Woods & Goodyear, Buffalo, N. Y., on the brief), for respondents.

Before LUMBARD, Chief Judge, and FRIENDLY and ANDERSON, Circuit Judges.

LUMBARD, Chief Judge:

■ This appeal, taken pursuant to Section 7482 of the Internal Revenue Code of 1954, involves yet another in the Commissioner's series of attempts to deal with the tax avoidance possibilities of reincorporation transactions by asking the courts to close the statutory loophole created by Sections 331 and 337 of the Code.[1] The appeal raises two specific questions: whether substantial cash distributions made by a corporation pursuant to a plan of complete liquidation should be taxed to the shareholders as a dividend, to the extent of the corporation's earnings and profits, because the corporation's operating assets had been transferred to another corporation which continued the business and which was fifty per cent owned by the liquidated corporation's shareholders; and whether, on these same facts, the gain realized by the old corporation on the transfer of the assets should be exempted from tax. The Tax Court held that the distributions were in complete liquidation and were taxable at capital gains rates under Section 331(a) (1) and that the liquidated corporation realized no gain on the transfer of its assets under Section 337(a). 43 T.C. 743 (1965). We affirm.

■ The basic facts, stipulated by the parties, support the Tax Court's conclusion that "the transaction here under attack was bona fide in every respect, was motivated by business considerations, and * * * any purpose to minimize income tax liability, if present at all, played only a minor role."

In 1952, Sidney Lettman, a pharmacist, suggested to Hyman Berghash, the owner of Delavan-Bailey Drug Co., Inc.,[2] which

---

[1]. 26 U.S.C. § 331

§ 331. Gain or loss to shareholders in corporate liquidations.
    (a) General rule.—
        (1) Complete liquidations.—Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock.
        (2) Partial liquidations.—Amounts distributed in partial liquidation of a corporation (as defined in section 346) shall be treated as in part or full payment in exchange for the stock.
    (b) Nonapplication of Section 301. Section 301 (relating to effects on shareholder of distributions of property) shall not apply to any distribution of property in partial or complete liquidation.
26 U.S.C. § 337

§ 337. Gain or loss on sales or exchanges in connection with certain liquidations.
    (a) General rule.—If—
        (1) a corporation adopts a plan of complete liquidation on or after June 22, 1954, and
        (2) within the 12-month period beginning on the date of the adoption of such plan, all of the assets of the corporation are distributed in complete liquidation, less assets retained to meet claims,
then no gain or loss shall be recognized to such corporation from the sale or exchange by it of property within such 12-month period.
See, generally, Lane, "The Reincorporation Game: Have the Ground Rules Really Changed?" 77 Harv.L.Rev. 1218 (1964).

---

[2]. Hyman Berghash owned 198 of the outstanding 200 shares of Delavan-Bailey. His wife, Rose, owned the other two shares.

operated a retail drugstore in Buffalo, New York, that they establish a new drugstore in a prospective shopping center in Buffalo. Berghash agreed and on November 24, 1952 the parties incorporated Dorn's Drugs, Inc., to engage in the retail drug business. On December 5, 1952, Dorn's leased space in the Seneca Shopping Plaza. However, the promoters of Seneca encountered financial difficulties and the entire project was eventually abandoned in 1955.[3]

Meanwhile, Lettman entered Delavan-Bailey's employ as a pharmacist on August 3, 1953 and became its manager sometime early in 1954. When the Senaca project failed in 1955, Berghash and Lettman attempted to find another location, examining several possibilities without succeess. Lettman also attempted to purchase an interest in Delavan-Bailey, but Berghash refused to sell.

In late 1956, Lettman informed Berghash that unless Berghash would sell him a 50% interest in Delavan-Bailey he would resign as manager. Because Lettman was an irreplaceable employee, Berghash agreed to the sale and the parties set the value of Delavan-Bailey's operation assets at $121,000.[4] However, all that Lettman could raise was $25,000. With this in mind, Berghash then consulted his lawyers and accountants who recommended the plan which was carried out.

On December 30, 1956, the stockholders of Delavan-Bailey adopted a plan of complete liquidation which provided for dissolution and distribution of all the assets within twelve months and gave the board of directors and officers the authority to dissolve the corporation and to distribute the assets to the stockholders.

At the end of January 1957, pursuant to a written contract between Berghash and Lettman, Delavan-Bailey transferred its operating assets to Dorn's in exchange for 100 shares of Dorn's common stock (valued at $25,000) and a negotiable promissory note for $96,101.64 executed by Dorn's. Lettman purchased the remaining 100 shares of Dorn's common stock for $25,000 in cash. Dorn's name was changed to Delavan-Bailey Drug Co., Inc., on February 4. Between January 29 and May 5, Delavan-Bailey distributed all its remaining assets to its stockholders, the Berghashes.[5] The corporation was dissolved by a certificate of dissolution filed with the Secretary of State of New York on April 23, 1957.

In their joint return for the year 1957, the Berghashes reported the gain on the liquidation of Delavan-Bailey as long-term capital gain with gross proceeds of $170,414.81, a cost basis of $2,211.46, and capital gain of $168,203.35. The Commissioner filed a notice of deficiency alleging that the distribution received by the Berghashes was in the nature of a dividend and thus taxable to the extent of Delavan-Bailey's earnings and profits ($122,050.11) at ordinary income rates.

In its return for the period January 1, 1957 through February 28, 1957, Delavan-Bailey Drug Co., Inc. reported that it owed no income tax on the capital gain it had realized because Section 337 applied to its transfer of assets and subsequent liquidation. The Commissioner filed a notice of deficiency alleging that such gain was fully taxable to the corporation at long-term capital gains rates. Timely petitions for review were filed in the Tax Court both by the Berghashes and by Delavan-Bailey Drug Co., Inc.

The Tax Court held for the taxpayers on both issues, resting its decision on the theory it evolved in Joseph C. Gallagher, 39 T.C. 144 (1962): since the transaction

3. Dorn's continued in existence although none of the authorized 200 shares of common stock was ever issued.

4. Inventory was taken and the stock in trade was valued at $70,583.05. The fixtures were valued at their replacement cost of $30,518.59. Goodwill was valued at the previous year's net profits of $20,000.

5. The Berghashes received 100 shares of Dorn's common stock, Dorn's negotiable promissory note (payable at the rate of $1,000 per month plus 6% interest on the remaining balance) and cash in the amount of $49,313.17.

was founded upon a bona fide business purpose,[6] and since the transaction was not a corporate reorganization within the meaning of Section 368(a) of the Code, Section 337 was applicable to the transfer of assets by Delavan-Bailey, and the assets received in Delavan-Bailey's liquidation were taxable to the shareholders at capital gains rates under Section 331(a) (1). The Commissioner makes a multipronged attack on the Tax Court's result; he condemns any result which would allow a shareholder to withdraw accumulated earnings at capital gains rates in a reincorporation transaction.

 We approve the approach adopted by the Tax Court in *Gallagher,* supra, and we feel it was appropriately applied by the Tax Court in this case. The only point upon which we see any need to expand upon the Tax Court's decision is the Commissioner's argument that, if the business of the liquidated corporation is continued by the new corporation, there is no "complete liquidation" within the meaning of Sections 331 and 337. This argument, apparently derived from an early report of the Senate Finance Committee, S.Rep. No. 398, 68th Cong., 1st Sess. 12 (1924) and from Treas.Regs. § 1–332–2(c) (1955) has been accepted in a dictum by the Fourth Circuit in a decision subsequent to the Tax Court's decision in the instant case. Pridemark, Inc. v. Commissioner, 345 F.2d 35, 41 (4 Cir. 1965).

We are in complete agreement with the Tax Court's resolution of this issue; its interpretation reflects the normal meaning of the words "complete liquidation" in Sections 331 and 337. To adopt the Commissioner's contention would do violence to the plain meaning of these statutes. It is inconceivable that the Berghashes would intentionally have reincorporated a corporation with a net worth of $124,000 if this would require them to pay income taxes of approximately $100,000, as the Commissioner here asserts are owing. We can only conclude that the Tax Court's result is consistent with the intent of Congress, which considered the reincorporation problem in 1954[7] but rejected specific proposals for dealing with it as the Commissioner suggests.

The decision of the Tax Court is affirmed.

---

6. Compare, Knetsch v. United States, 364 U.S. 361, 81 S.Ct. 132, 5 L.Ed.2d 128 (1960); Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596 (1935).

7. H.Conf.Rep.No.2543, 83rd Cong., 2nd Sess., p. 41, 3 U.S.Code Cong. & Adm. News (1954) pp. 5280, 5301.