**J. Jay ROMMER, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 415–62.**

United States District Court
D. New Jersey.

Dec. 14, 1966.

David Mandelbaum, Newark, N. J., Murray M. Weinstein, New York City, of counsel, for plaintiff.

David M. Satz, Jr., U. S. Atty., Newark, N. J., Herman Wilson, Department of Justice, Washington, D. C., for defendant.

## OPINION

AUGELLI, District Judge.

This is an action for refund of income taxes for the fiscal year ended June 30, 1958, paid by plaintiff as transferee of assets of Sandor Corporation. Plaintiff admits he is a transferee, as alleged, and that if the corporation has incurred a tax liability, he is responsible therefor. This Court has jurisdiction under 28 U.S.C.A. § 1346(a) (1).

The operative facts are not in dispute. Sandor Corporation (Sandor) was organized as a New Jersey corporation in 1946 for the purpose of acquiring and operating a luxury-type apartment building at 125 Prospect Street, East Orange, New Jersey. Plaintiff, a physician, was a 40% stockholder; his wife Claire Rommer, a teacher, owned a like stock interest; and plaintiff's brother-in-law, Max Streit, an attorney, owned the remaining 20% of the stock.

In 1956 the stockholders, due to increasing preoccupation with their own individual professional activities, and because of continuing difficulties encountered in the management and operation of the Prospect Street property, decided to sell the building and get out of the real estate business. They were not interested in any transaction that would involve the acquisition of other property in connection with the proposed sale. Efforts to sell the property, by newspaper advertisements and other means, proved unsuccessful because of the large cash outlay that would be required of a purchaser. The matter was then turned over to real estate brokers. In March of 1957, Melvin Gebroe, a real estate broker, informed plaintiff he could effect a sale of the Prospect Street property if Sandor would accept as part payment therefor a tenement house located at 90 Spruce Street, Newark, New Jersey. This offer was rejected. Continued efforts to sell produced no results.

Finally, on September 12, 1957, the Sandor stockholders, in reliance on assurances given by Gebroe that the Spruce Street property would be relatively easy to sell, caused Sandor to enter into a contract of sale and exchange with Spruce Realty Holding Company, whereby Sandor would receive the Spruce Street property as part payment for the Prospect Street property. It is clear from the testimony of plaintiff and Gebroe that it was the intention of the Sandor stockholders to dispose of the Spruce Street property as soon as possible after its acquisition by Sandor, and to this end Gebroe was authorized, right after the September 12 contract was signed, to look for buyers for the property.

On December 20, 1957, the stockholders of Sandor, who were also the officers and directors of the corporation, adopted a plan of liquidation pursuant to Section 337 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 337(a) (1) (2). The Sandor resolution, which incorporated the plan of liquidation, authorized the officers of Sandor to complete the exchange of property as an incident to the liquidation, and to distribute all of Sandor's assets within 12 months of December 20, 1957, following which the corporation was to be dissolved.

On January 8, 1958, Sandor conveyed its Prospect Street property to Spruce Realty Holding Company and the latter conveyed its Spruce Street property to Sandor. As a result of this transaction, Sandor received approximately $412,000.00 in cash, plus the Spruce Street property, having an equity therein of $40,000.00. In connection with the distribution of Sandor's assets, a question arose as to the disposition to be made of the Spruce Street property. Because of the nature of the property, a low-rental tenement, the Sandor stockholders did not want to have their names associated with it, nor incur the personal

responsibility that would result from taking title in their individual names. Moreover, stockholder Streit preferred to have his 20% interest in the property paid to him in cash. It was ultimately decided that Streit would be paid in cash ($8,000.00) for his 20% interest in the Spruce Street property, and that title thereto would be conveyed to a corporation to be formed for that purpose. Accordingly, the Winx Corporation (Winx) was organized on December 26, 1957, plaintiff and his wife being the only stockholders thereof, each owning 50% of the stock.

On January 13, 1958, Sandor, pursuant to its plan of liquidation, conveyed the Spruce Street property to Winx, and distributed to its stockholders, on a pro rata basis, the cash received from the sale of its Prospect Street property. On the same date, Form 966 (information returned required to be filed by corporations within 30 days after adoption of a plan of liquidation) was mailed to the District Director of Internal Revenue, together with a certified copy of the Sandor resolution incorporating the plan of liquidation. Thereafter, in August 1958, Sandor was dissolved in accordance with the provisions of New Jersey law.

On August 18, 1961, the Commissioner of Internal Revenue made a deficiency assessment of income taxes against Sandor for the tax year ended June 30, 1958, in the sum of $84,004.81, plus interest of $14,322.24. On the same day the Commissioner made an assessment against plaintiff, for the same amount, as transferee of Sandor assets. Plaintiff, as transferee, paid said tax and timely filed a claim for refund. No action having been taken on said claim, this suit was commenced.

In support of his claim for refund, plaintiff contends there has been full compliance by Sandor with the provisions of Section 337 of the Internal Revenue Code of 1954, and that by reason thereof the corporation was not subject to tax on the gain resulting from the sale of its Prospect Street property. Defendant, on the other hand, in support of the action taken by the Commissioner, contends that while there may have been a literal compliance with the requirements of Section 337, the transactions involved, while unorthodox, establish nothing more than a liquidation and reincorporation of Sandor under a different name, or a reorganization of Sandor under Section 368 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 368(a) (1) (D).

■ There is no merit to the contention that the transactions here under scrutiny may be viewed as a liquidation and reincorporation of Sandor, by means of which Sandor, under the name of Winx, continued in the real estate business with Sandor assets. In this case Sandor adopted a plan of complete liquidation and pursuant thereto sold its sole operating asset, the Prospect Street property, to a completely independent entity, Spruce Realty Holding Company. In return, Sandor received cash and the Spruce Street tenement property. These assets were distributed to the Sandor stockholders in the manner previously indicated. The Spruce Street property was held by Sandor from January 8 to January 13, 1958. During this short period of time said property could hardly be considered the operating asset of Sandor. That asset, the Prospect Street property, was gone. Sandor was, in effect, out of business and in process of liquidation. The holding of title to the Spruce Street property, for a few days, was merely one step in Sandor's plan of total liquidation. But defendant elects to treat this property as the operating asset of Sandor, and argues that its conveyance to Winx on January 13, 1958, resulted in a reincorporation of "the only operating property" of Sandor. This approach is unrealistic and places too much stress on a single step in a transaction that should be viewed as a whole. See Armour v. Commissioner, 43 T.C. 295 (1964). There was no liquidation and reincorporation of Sandor.

There is likewise no merit to defendant's alternative contention that if

the transaction in question is not a liquidation-reincorporation, it may be considered a reorganization under Section 368. This is predicated on the alleged transfer by Sandor of all of its assets to Winx within the meaning of Section 354 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 354(b) (1) (A). In substance, and insofar as is material here, Section 368 provides that a transfer by a corporation of all or part of its assets to another corporation will constitute a reorganization if immediately after the transfer the transferor, or one or more of its shareholders, is in control of the corporation to which the assets are transferred, and stock or securities of the transferee corporation are distributed in a transaction which qualifies under Section 354. To qualify under Section 354, the transferee corporation must acquire "substantially all of the assets" of the transferor corporation, and any stock, securities or other property received by the transferor corporation must be distributed in pursuance of the plan of reorganization.

■ In support of its reorganization theory, defendant contends that Sandor transferred substantially all of its assets to Winx, and argues that the words "substantially all" in Section 354 refer to the operating assets of the transferor corporation, and not to the liquid assets that are distributed pursuant to a reorganization plan. The authorities cited by defendant on this branch of the case are distinguishable on their facts. In each instance there was clearly a transfer of substantially all of the assets of the transferor corporation to a successor corporation, coupled with a continuance of the first corporation's business by its successor. But the facts here are different; and while it is true, as stated by defendant, that the question of what constitutes "substantially all" of the assets of a transferor corporation is not to be determined by the application of an arbitrary percentage figure, it does not follow that a "percentage figure" may not be a factor in the overall picture. In cases of this nature the transaction must be viewed in its entirety.

■ Sandor's principal and only asset, the Prospect Street property, was not transferred to Winx. What was transferred to Winx was the Spruce Street property, acquired by Sandor and conveyed by it to Winx under the circumstances heretofore related. Defendant, treating the Spruce Street property as Sandor's "only operating asset", contends that its conveyance to Winx clearly resulted in a statutory reorganization of Sandor under Section 368, thereby subjecting Sandor to a taxable gain on the sale of its assets. Even if it be assumed under the facts of this case that the Spruce Street property could be classified as an operating asset of Sandor, it represented but 9% of the total value of Sandor assets. To view this conveyance as a transfer of "substantially all" of Sandor's assets, borders on the frivolous. This Court is satisfied that Sandor did not, within the intendment of Section 354 transfer "substantially all" of its assets to Winx. Under the circumstances there could be no reorganization of Sandor under Section 368.

■ This Court is satisfied that Sandor has complied with the requirements of Section 337. In pertinent part, Section 337 states the general rule to be that if "(1) a corporation adopts a plan of complete liquidation on or after June 22, 1954, and (2) within the 12-month period beginning on the date of the adoption of such plan, all of the assets of the corporation are distributed in complete liquidation, less assets retained to meet claims, then no gain or loss shall be recognized to such corporation from the sale or exchange by it of property within such 12-month period." The "plain and simple" language of this statute is admitted by defendant. But, says defendant, Section 337 does not cover every fact situation that comes within its literal terms, and resort must be had to the legislative history to ascertain what Congress intended to cover by the "plain and simple" language it used. The legislative

history is set forth in Vol. 3, 1954 U.S. Code Cong. and Adm. News, p. 4017. This Court has examined the pertinent provisions thereof, covering both the House and Senate Reports, at pp. 4064, 4244, 4679 and 4896. Nothing therein contained is indicative of a Congressional intent to impose upon a corporation seeking to come within the provisions of Section 337, conditions other than those plainly and clearly expressed in said section. Under the circumstances, there is no room for construction, and resort need not be had to any legislative history. See: Commissioner v. Ridgway's Estate, 291 F.2d 257 (3 Cir. 1961); United States v. 11 Star Pack, 248 F.Supp. 933 (E.D.Pa.1966); United States v. Oregon, 366 U.S. 643, 648, 81 S.Ct. 1278, 6 L.Ed.2d 575 (1961).

After conclusion of the hearing in this Court, an appeal then pending from the Tax Court decision in Berghash v. Commissioner, 43 T.C. 743, was decided. The opinion of the Court of Appeals for the Second Circuit is reported, sub nom. Commissioner v. Berghash, in 2 Cir., 361 F.2d 257. That case involved a corporate liquidation, followed by a distribution of assets to the stockholders of the transferor corporation, dissolution thereof, and continuance of the business of the transferor by a successor corporation. The stockholders of the transferor (husband and wife) filed a joint tax return in which they reported the gain on the liquidation of the transferor as a long-term capital gain. The transferor, in its return for the period in question, reported no income tax on the gain it had realized, relying on the application of Section 337 to the transfer of its assets and subsequent liquidation.

With respect to the stockholders, the Commissioner of Internal Revenue filed a notice of deficiency, alleging that the distribution received by them was in the nature of a dividend, and hence taxable to the extent of the transferor's earnings and profits at ordinary income rates. As to the transferor, the Commissioner filed a notice of deficiency, claiming in this instance that the gain realized by it was fully taxable to the corporation at long-term capital gains rates. An appeal to the Tax Court by the taxpayers resulted in a decision in their favor. That Court held that the assets received by the stockholders in connection with the liquidation of the transferor corporation were taxable to them at capital gains rates under Section 331(a) of the Internal Revenue Code of 1954, and since the transaction under attack was not a reorganization of the transferor within the meaning of Section 368, that Section 337 was applicable to the transfer of assets that had been made by the transferor to its stockholders. The Court of Appeals affirmed.

With respect to the issue here involved, the facts in Berghash were even stronger than those in the case at bar to support defendant's contention that there should be no application of Section 337. The successor corporation in Berghash continued to operate the same drug store that had been owned by the transferor corporation, under the same name, and in the same location. Notwithstanding, the Tax Court concluded:

"We are unable to find any authority or any indication from the legislative history of section 337 that would require us to disregard the actual liquidation of [the transferor corporation] * * *. We therefore hold that no gain or loss is recognizable to [the transferor corporation] as a result of the sale in question."

■ Upon a consideration of the record in this case, this Court is satisfied that the officers, directors and stockholders of Sandor adopted a plan of complete liquidation of the corporation, and that within 12 months after adoption of said plan, Sandor did distribute to its stockholders, in complete liquidation, all of its assets, and that under the provisions of Section 337, Sandor is not subject to tax on the gain resulting from the sale-exchange of its property located at 125 Prospect Street, East Orange,

New Jersey. It follows that the tax imposed on Sandor, and paid by plaintiff, as transferee of its assets, was erroneous, and that plaintiff is entitled to a refund thereof.

This opinion shall constitute findings of fact and conclusions of law under Rule 52(a) of the Federal Rules of Civil Procedure. Counsel for plaintiff will please submit an appropriate order, on notice to counsel for defendant.