**E. O. HOLLIMAN, as Trustee in Bankruptcy of Briskman's Department Store, Inc., Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

**Civ. A. No. 3957-65.**

United States District Court
S. D. Alabama, S. D.

Nov. 9, 1967.

Vincent F. Kilborn, Kilborn, Darby & Kilborn, Mobile, Ala., Meyer Perloff, Perloff & Reid, Mobile, Ala. (of counsel), for plaintiff.

Vernol R. Jansen, Jr., U. S. Atty., D. Broward Segrest, Asst. U. S. Atty., Mobile, Ala., Hubert Doster, Tax Division, Dept. of Justice, Washington, D. C., for defendant.

## OPINION

DANIEL HOLCOMBE THOMAS, Chief Judge.

This is a suit for refund of taxes paid in the fiscal years 1958, 1959 and 1960 by Harry's Department Store, an Alabama corporation. By reason of losses sustained in subsequent years a carry back of such losses would normally result in there being refunds to which that corporation would be entitled. The amounts of the overassessments for the fiscal years referred to are not disputed between the parties. The issue is whether or not the corporation of which the plaintiff is Trustee in Bankruptcy is entitled to those refunds. That corporation claims to be entitled to the benefit of the refund on the ground that the corporation which succeeded Harry's Department Store, a corporation, was a mere change of identity, form, or place of organization, however effected, of the old Harry's Department Store. The plaintiff contends that an "F" reorganization of Harry's Department Store, Inc. occurred by reason of the matters which will be set out in this opinion (Internal Revenue Code, Section 368(a) (1) (F). If there was such an "F" reorganization then the succeeding corporation, of which the plaintiff is Trustee in Bankruptcy,

might take advantage of the provisions of Section 381(a), Internal Revenue Code, and reclaim as an asset of the bankrupt estate the over-assessed taxes to which Harry's Department Store would have been entitled.

At the time of bankruptcy the corporation claiming to be the "F" successor to Harry's Department Store had changed the name to Briskman's Department Store, Inc. However, for a clear understanding of the situation it is referred to here as Harry's of Alabama, this being the name the corporation took on its original formation. If Harry's of Alabama, Inc., therefore, was an "F" reorganization of Harry's Department Store, Inc. plaintiff will recover. As the ultimate conclusion the Court finds that Harry's of Alabama, Inc., an Alabama corporation, is such an "F" reorganization and the recovery of the overassessment should be allowed in accordance with the opinion in this case.

Harry's Department Store, Inc. was incorporated in Mobile County, Alabama, in 1948. Its stock was owned by a Mr. Harry Friedlander and his wife. It did a general retail clothing and ready-to-wear business in the downtown section of Mobile, Alabama, at Dauphin and St. Emanuel Streets. At that location Harry's Department Store operated its business and is referred to here for convenience as the "Operating Company". In 1956 Friedlander organized a company known as "Harry's Discount Company". This is referred to in this opinion as the "Discount Company". Owned by the same interests as the Operating Company it was organized by Friedlander for purpose of financing receivables generated by the Operating Company.

August 1, 1960 Mr. and Mrs. Friedlander sold their stock in both the Operating Company and the Discount Company to Son-Mark Industries, Inc. The new owners promptly "raided" the corporate treasury of the Discount Company, took its accounts receivable and pledged them to obligations of Son-Mark Industries owed to third parties. Subsequently it lost the accounts receivable which it

had pledged on a foreclosure. Later, Son-Mark Industries itself bankrupted. On acquisition therefore by Son-Mark Industries it effectively stripped the Discount Company of whatever assets it had, leaving it as a mere shell, without assets.

As to the Operating Company, on its acquisition by Son-Mark it continued operations at the same location with the same type merchandise from acquisition in August, 1960, until the stock was sold by Son-Mark to Milton Briskman and his wife in March, 1961. At the same time the stock of the Operating Company was sold to Briskmans the stock of the Discount Company was sold them as well. However, since the Discount Company had no assets they acquired nothing by buying the Discount stock.

After the Briskmans acquired the Operating Company stock, it entered a written agreement with L. F. Dommerich & Company, Inc. of New York. Dommerich was a factor. By the agreement the Operating Company agreed to assign all accounts receivable to the factor in consideration of loans and advances to be made. Under this contract all advances to the Operating Company on accounts receivable were in fact received by the Operating Company and all loans were in fact made to it.

When the stock ownership was acquired from Son-Mark by Briskman and his wife they continued the operation of Harry's Department Store under that name and corporate structure at the same location with the same type of merchandise. Unknown to Briskman when he bought, inventory was overstated and furnishings and fixtures overvalued. In reality when Briskman took over control of the corporation it owed considerable money and substantial outstanding accounts payable.

Under the factoring agreement with Dommerich the Operating Company borrowed against all accounts receivable approximately 60% on accounts receivable considered as current. All collections on accounts were made through its department store and remittances were made to Dommerich daily. If accounts aged with-

out payment, such delinquent accounts were not recognized between the parties in determining borrowing capacity of Harry's. Whatever equity the Operating Company earned in assigned accounts after repayment of advances and charges, was retained by Dommerich as reserves or cushions to further secure it repayment of loans.

By the fall of 1961 financial troubles of the Operating Company were acute. Accounts payable were long delinquent. Creditors were pressing. Mr. Briskman went to New York and sought advice of attorney Irwin Schneider to assist in staving off imminent corporate collapse. For various reasons Schneider counseled against any Chapter 11 reorganization proceeding. He suggested instead, as a solution to the corporate financing problems, that there be effected what Schneider termed a "common law settlement" with creditors.

In carrying through this settlement unsecured creditors formed a creditors' committee. By agreement between the Operating Company and this committee, Dommerich was to be prevailed upon to release to the Operating Company from its equity reserve cushions, sufficient money to pay for an audit by independent accountants to verify its financial predicament. On this being confirmed a new corporation, to be known as Harry's of Alabama, would be formed in Mobile County, Alabama, to be owned by Briskman and his wife. There would then take place a bulk sale of all assets of the old Harry's Department Store to this new corporation for an amount which would yield common creditors 22½% of their claims in cash on the transfer, an additional 2½% in May, 1962, and 5% in August, 1962, 5% in January, 1963 and 5% in July, 1963. If the arrangement worked out therefore common creditors would eventually get 40¢ on the dollar.

Schneider proposed that priority creditors be paid in full (or in such amounts as could be negotiated with priority creditors) and that the "common law settlement" include payment by the old-new company of all expenses of effecting the arrangement.

To get the funds necessary to make the payments to common creditors Dommerich agreed to release to Harry's Department Store $37,500.00 more from the equity cushion. Harry's Department Store was to add to this $5,000.00 from its available cash. Mr. and Mrs. Briskman were to borrow personally and put into the new company treasury, $10,000.-00. The total $52,500.00 thus available would be used to effectuate the "common law settlement".

The proposed transfer arrangement contemplated a notice to all unsecured creditors that the old corporation would transfer all its assets to the new corporation in a bulk sale. Apparently Schneider considered that this "bulk sale" would effectively cut off unsecured creditors from complaining, leaving the same business with a new face opening the doors the morning following the settlement. As a part of the arrangement the new company would assure these unsecured creditors that if the deferred portions of payments to be made each in the future were not met by the new company as agreed when due this would not prejudice rights of the unsecured creditors to claim the full amount owing each in any ensuing bankruptcy or receivership proceedings.

This "settlement" was completed January 9, 1962 in New York. A bill of sale transferred all assets of Harry's Department Store, Inc. (and any of Harry's Discount Corporation, if it had any) to the new Harry's of Alabama, Inc. just being organized. The bill of sale included all assets of any type whatever. The transaction was handled by Schneider and the creditors' committee. Dommerich delivered its $37,500.00 to Schneider. Harry's Department Store placed with him the $5,000.00 it was to contribute. Briskman and his wife borrowed their $10,000.00 contribution and this too was given Schneider. With the $52,500.00 thus in hand Schneider and the creditors' committee paid in cash to common creditors the 22½% of their respective claims agreed to be paid in

cash. They further paid from these funds the expenses of the transaction. Notes to creditors for the ensuing installment payments due were executed by Harry's of Alabama, Inc. promising to pay the installment portions unpaid on the overall 40% of the respective claims. These were delivered the creditors. The new Harry's of Alabama assumed all interests in the factoring agreement with Dommerich and undertook all its obligations.

In anticipation of the ultimate accomplishment of the arrangement just referred to, Schneider and the auditors had fixed an arbitrary cut-off date when they compiled their original list of common creditors of Harry's Department Store to be dealt with, at November 30, 1961. As to sales taxes owing by the old Operating Company and as to merchandise shipped to it after the cut-off date and before the new company became viable January 9, 1962, the new company paid these obligations in the regular course of its business. It assumed all the secured obligations of the old concern.

The new corporation continued in the same business, therefore, at the same location, with the same secured creditors, the same management, the same stockholders and the same financing arrangements as the old company. The only change whatever which resulted from the arrangement was a scaling down of obligations owed unsecured creditors, to 40% of the amounts originally owed each. The common creditors drew what comfort they could that 22½% of their claim had been paid them in cash when the new company came to exist and received transfer of the Operating Company's assets. Each of the old common creditors accepted, as well, four installment notes of the new company for the 17½% of its claim yet to be paid.

At a later date the name of Harry's of Alabama was changed to "Briskman's Department Store". Except for this change in name, however, the business continued just as before until bankruptcy.

As to the old Operating Company, which had transferred all its assets to the new one in January, 1962, it did no further business whatever. It was finally dissolved at the end of 1963 by its two shareholders, Briskman and his wife.

Harry's of Alabama continued in business until August, 1964 when, under its changed name, it became a bankrupt.

It seems clear that the only difference between Harry's Department Store, Inc. and the later Harry's of Alabama, Inc. was that common creditors of the old company accepted 22½% cash and 17½% in notes for the obligations owing them. There were no other changes at all.

The Court finds that the arrangement was clearly an "F" reorganization within the meaning of Section 368(a) (1) (F). There was a change of vehicle but not of substance. In Davant v. Commissioner of Internal Revenue (C.A. 5) 366 F.2d 874, this Circuit recently spoke on the subject of "F" reorganizations. It said in part:

"A Section 368(a) (1) (F) reorganization is defined as 'a mere change in identity, form, or place of organization, however effected.' * * * In the past, type (F) reorganizations have overlapped with type (A), (C) and (D) reorganizations. For this reason this provision has received almost no administrative or judicial attention. It is true that a substantial shift in the proprietary interest in a corporation accomplishing a reorganization can hardly be characterized as a mere change in identity or form * * * The term 'mere change in identity [or] form' obviously refers to a situation where it represents a mere change in *form* as opposed to a change in substance. Whatever the outer limits of Section 368(a) (1) (F), it can clearly be applied where the corporate enterprise continues uninterrupted, except for a distribution of

some liquidated assets or cash. Under such circumstances, *there is a change of corporate vehicles but not a change in substance.*"

In Ahles Realty Corporation v. Commissioner of Internal Revenue (C.A. 2, 1941), 71 F.2d 150, the present subsection (F) was known as subsection (D) of the 1926 Internal Revenue Code. In that case the petitioner acquired all of the capital stock of the old company and took over its properties, whereupon the old company ceased to exist. When this transaction was completed the sole stockholder of the old company, the sole stockholder of the new company as well, had a 100% interest in the identical assets.

The Court observed in part:

"This was a reorganization within the statute * * *"

* * * * * *

"There was a continuity of interest in the transaction, a continuation of the business conducted by the old corporation under the modified corporate form. After reorganization, the sole stockholder became the sole stockholder of the new, and the new corporation at completion was possessed of the same assets as the old."

The Tax Court, in Hyman H. Berghash, 43 T.C. 743, affirmed Commissioner of Internal Revenue v. Berghash, 2 Cir., 361 F.2d 257, recently discussed "F" reorganizations in a situation where it finally ruled that there was no "F" reorganization. But its comments seemed apt.

"Although the exact function and scope of the (F) reorganization in the scheme of tax deferred transactions described in Section 368(a) (1) have never been clearly defined, it is apparent from language of subparagraph (F) that it is distinguishable from the five preceding types of reorganizations as encompassing only the simplest and least significant of corporate changes. The (F) type reorganization presumes that the surviving corporation is the same corporation as the predecessor in every

respect except for minor or technical differences * * *

"The decisions involving subparagraph (F) or its counterpart in prior Revenue Acts consistently have imposed at least one major limitation on transactions that have been claimed to qualify therefor: If a change in stock ownership or a shift in proprietary interest occurs, the transaction will fail to qualify as an (F) reorganization."

Here we have the same stockholders owning the old and the new company. We have the same assets. We have the same liabilities except for the scaled down demands of common creditors. And even as to these the new corporation agreed that if it failed to pay the installment parts of their respective debts the common creditors were free to advance claims for the full amounts owing should there be a subsequent bankruptcy. The changes made were insignificant.

The plaintiff is entitled to judgment.