**Thomas P. STANTON and Wanda S. Stanton, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 71-1735.**

United States District Court, E. D. Pennsylvania.

Feb. 20, 1974.

Eugene R. Lippman, Thomas A. Bell, Krusen, Evans & Byrne, Philadelphia, Pa., for plaintiffs.

Michael Von Mandel, U. S. Dept. of Justice, Tax Div., Washington, D. C., for defendant.

## FINDINGS OF FACT

NEWCOMER, District Judge.

The facts which give rise to the controversy involved herein are not disputed by the parties and for that reason, the case has been submitted to the Court as a case stated. Pursuant to Federal Rule of Civil Procedure, rule 52(a), the Court adopts the facts as stipulated by the parties as our own and sets them forth as follows:

1. Plaintiffs Thomas P. and Wanda S. Stanton, husband and wife, reside at 639 Colonel Dewees Road, Wayne, Pennsylvania 19087.

2. Defendant is the United States of America.

3. Jurisdiction exists under 28 U.S.C. § 1346(a)(1).

4. Thomas P. Stanton formed a business in 1961 known as Stanton Refracto-

ry Sales Company, which he operated thereafter as a sole proprietorship.

5. In 1964, plaintiff Thomas Stanton filed an election to have his sole proprietorship taxed as a corporation under the Internal Revenue Code of 1954, a procedure then available under Section 1361 of the Code.

6. This election was made formally by Thomas Stanton in a letter dated February 17, 1964, addressed to the District Director of Internal Revenue, and beginning with the calendar year 1964, plaintiff Stanton filed federal corporate income tax returns (Form 1120) on behalf of his business.

7. The effect of this election by plaintiff Stanton was to retain his status as a sole proprietor for all purposes except federal income taxation, with respect to which the business was treated as an actual corporation owned entirely by plaintiff Stanton.

8. As the result of legislative action, all outstanding Section 1361 elections, including that of plaintiff Stanton, would terminate by law on January 1, 1969, unless the election was terminated earlier.

9. Prior to this amendment, which became effective on April 14, 1966, an election to be taxed as a corporation under Section 1361 was binding and irrevocable except in very limited circumstances.

10. The amendment permitted free revocation of the election at any time after the effective date of the legislation.

11. Faced with an involuntary termination of his election on January 1, 1969, plaintiff elected to terminate his election voluntarily on November 1, 1966. The Balance Sheet of Stanton Refractory Sales Company reflected the following as of October 31, 1966:

ASSETS:

| | | |
|---|---|---|
| Cash | $122,314.41 | |
| Accounts Receivable | 45,561.18 | |
| Inventory | 39,144.74 | |
| Furniture and Equipment (Net of depreciation) | 10,242.75 | |
| Insurance Deposit | 140.00 | |
| Telephone Deposit | 100.00 | |
| TOTAL ASSETS | | $217,503.08 |

LIABILITIES:

| | | | |
|---|---|---|---|
| Accounts Payable | | $ 50,406.33 | |
| Accrued Payroll Taxes | | 1,746.96 | |
| Provision for Federal Income Taxes | | 4,933.52 | |
| Equity: | | | |
| Paid-In Capital | $ 22,067.54 | | |
| Retained Earnings | 138,348.73 | | |
| | | 160,416.27 | |
| TOTAL LIABILITIES | | | $217,503.08 |

12. Following the termination of his Section 1361 election on November 1, 1966, plaintiff incorporated Stanton Refractories, Inc. on November 1, 1966. Plaintiff received 51 percent of the stock in Stanton Refractories, Inc. and his wife received the remaining 49 percent, with initial capitalization being

$10,000. Plaintiff formed the formal corporation after discussion with his advisers for the following business purposes: (1) organization of a business entity with nominal paid-in capital to facilitate the transfer of business to employees upon retirement, and (2) the adoption of a profit sharing plan whose benefits to employees would be substantially in excess over those permitted to a sole proprietorship.

13. At the time of the termination of the Section 1361 election of Stanton Refractory Sales Company and the incorporation of Stanton Refractories, Inc.,

plaintiff retained cash of $114,052.58 and Accounts Receivable of $41,297.21, and assumed a debt for Federal taxes of $4,933.52.

14. Also at the time of the termination of the Section 1361 election of Stanton Refractory Sales Company and the incorporation of Stanton Refractories, Inc., the operating assets of the business were transferred to Stanton Refractories, Inc.

15. The opening Balance Sheet of Stanton Refractories, Inc. on November 1, 1966 reflected the following:

ASSETS:

| | | |
|---|---|---|
| Cash | $ 8,261.83 | |
| Accounts Receivable | 4,263.97 | |
| Inventory | 39,144.74 | |
| Furniture and Equipment (Net of depreciation) | 10,242.75 | |
| Insurance Deposit | 140.00 | |
| Telephone Deposit | 100.00 | |
| TOTAL ASSETS | | $62,153.29 |

LIABILITIES:

| | | |
|---|---|---|
| Accounts Payable | $50,406.33 | |
| Accrued Taxes | 1,746.96 | |
| Net Equity: | | |
| Capital Stock | $10,000 | |
| Retained Earnings | 0 | |
| | 10,000.00 | |
| TOTAL LIABILITIES | | $62,153.29 |

16. As of October 31, 1966, Stanton Refractory Sales Company had retained earnings of $138,348.73. Plaintiff's adjusted basis in his interest in Stanton Refractory Sales Company on that date was $22,067.54.

17. On his Federal Income Tax Return for 1966, plaintiff treated the November, 1966 transactions as a liquidation of Stanton Refractory Sales Company, distribution of all the assets of the Company to plaintiff, and the contribu-

tion of the operating assets by plaintiff to Stanton Refractories, Inc. As a result, plaintiff reported the gain on the transaction as long-term capital gain.

18. Plaintiff computed the gain on the transaction as follows:

| | |
|---|---|
| Total Equity | $160,416.27 |
| Basis: Paid-in Capital | 22,067.54 |
| Net Gain | $138,348.73 |

19. The Internal Revenue Service treated the transaction of November 1,

1966 as a taxable dividend rather than a long-term capital gain.

20. The Internal Revenue Service assessed a deficiency against the plaintiffs for the year 1966 in the amount of $48,104.65. Said amount together with interest in the amount of $8,568.55 for a total payment of $56,673.20 was paid to the defendant on April 8, 1970.

21. Timely claim for refund for the year 1967 was filed on May 1, 1970 with the District Director of Internal Revenue at Philadelphia, Pennsylvania.

22. Plaintiffs received notice dated June 16, 1971 stating that said claim for refund was disallowed.

## DISCUSSION

The plaintiffs Thomas P. and Wanda S. Stanton, are suing for a refund of back taxes which allegedly arose out of the 1966 termination and liquidation of Mr. Stanton's business enterprise, Stanton Refractory Sales Company. The problem arises out of the fact that Mr. Stanton received a distribution of assets of Stanton Refractory Sales Company upon liquidation and immediately thereafter set up a new corporation to carry on the business of the old proprietorship. The new corporation was named Stanton Refractories, Inc.

In their 1966 joint Federal Income Tax Return, the plaintiffs treated the distribution of assets of the 1361 pseudo corporation to Thomas P. Stanton as a long-term capital gain. Plaintiffs did not treat the gain realized as a dividend to Mr. Stanton because Section 331(b)[1] through Section 1361(l) excludes the application of Section 301[2] relating to distributions of property of a corporation to a shareholder of the corporation in the case of a partial or complete liquidation.

Plaintiffs contend that the voluntary revocation of Stanton Refractory Sales Company's election prior to the termination date of January 1, 1969 is controlled by Section 1361(n).

Section 1361(n) reads:

"An election under subsection (a) with respect to an unincorporated business enterprise may be revoked after the date of the enactment of this subsection by the proprietor of such enterprise or by all the partners owning an interest in such enterprise on the date on which the revocation is made. Such enterprise shall not be considered a domestic corporation for any period on or after the effective date of such revocation. A revocation under this paragraph shall be made in such manner as the Secretary or his delegate may prescribe by regulations." 1361(n) (l).

Plaintiffs further contend that because of the language used in the second sentence of Section 1361(n)(l), the 1361 enterprise ceases to be a corporation and the enterprise and its owners are treated

---

1. Section 331. Gain or loss to shareholders in corporate liquidations.
  (a) General rule—
    (1) Complete liquidations—Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock.
    (2) Partial liquidations—Amounts distributed in partial liquidation of a corporation (as defined in Section 346) shall be treated as in part or full payment in exchange for the stock.
  (b) Nonapplication of Section 301—Section 301 (relating to effects on shareholder of distributions of property) shall not apply to any distribution of property (other than a distribution referred to in paragraph (2)(B) of Section 316(b)) in partial or complete liquidation.

2. Section 301. Distributions of property.
  (a) In general—Except as otherwise provided in this chapter, a distribution of property (as defined in section 317(a)) made by a corporation to a shareholder with respect to its stock shall be treated in the manner provided in subsection (c).
  (b) . . .
  (c) Amount taxable—In the case of a distribution to which subsection (a) applies—
    (1) Amount constituting dividend—That portion of the distribution which is a dividend (as defined in Section 316) shall be included in gross income.
    (2) . . .
    (3) . . .

as if the corporation had distributed its assets in a complete liquidation on the effective date of the revocation. Where such event takes place, Section 1361(*l*) of the Code comes into play.

Section 1361(*l*) reads:

"A distribution in partial or complete liquidation with respect to a proprietorship or partnership interest by an enterprise as to which an election has been made under subsection (a), shall be treated as a corporate liquidation in accordance with part II of subchapter C [§§ 331–346] of the chapter."

We have already seen that Section 331 would require that the distribution in liquidation be accorded capital gains treatment. This is the thrust of plaintiffs' argument.

The Internal Revenue Service did not accept plaintiffs' argument for capital gains treatment under Section 331. As a result of an audit of plaintiffs' 1966 tax return, it concluded that the distribution of cash and accounts receivable of the Stanton Refractory Sales Company was a "boot" dividend taxable as ordinary income under Section 301 of the Code.

The government's position is posited specifically on the repeal of Section 1361(m) by Section 4(a)(4), Act of April 14, 1966, P.L. 89–389, 80 Stat. 115, effective April 14, 1966, and subsequent Treas.Regs. promulgated thereafter.

There is no doubt that the repeal of Section 1361(m) on April 14, 1966 was a direct response to the difficulties faced by Section 1361 corporations in shifting all their assets to actual corporate form as a result of Treas.Reg. 1.1361–5(b) [3] and was enacted as a relief provision for all such business enterprises "forced" to incorporate by the automatic termination of their election. This purpose for the amendment was explained in detail in the Committee Reports accompanying the Act as follows (S.Rep.No.1007, 89th Cong., 2d Sess., p. 10 (1966–1 Cum.Bull. 527, 533–34), U.S.Code Cong. & Admin. News 1966, p. 2150):

"One of the major problems with this election for corporate tax treatment has been that where this election has been made and then subsequently the owners want to actually incorporate the business, this cannot be done in many cases without payment of substantial taxes. This occurs because it has been held that the incorporation of such a business must be treated first as a taxable liquidation of the business subject to the election and only then as the incorporation of the business. Two Tax Court decisions have agreed with the regulations (Regulations, sec. 1.1361–5(b)) in this respect.* This has proved to be a trap for the unwary and may well account for a substantial proportion of the less than 1,000 businesses under this option. They may not have been

3. Treas.Regs. 1.1361–5 Election irrevocable.
   (b) *Effect of ceasing to conduct business in an unincorporated form*—(1) *Transactions prior to April 15, 1966*. Except as provided in paragraph (a) of this section, an election made under section 1361 continues so long as the business of the enterprise is conducted in an unincorporated form. If the owners cease conducting the business of the enterprise in an unincorporated form before April 15, 1966, the election terminates and the assets of the enterprise are deemed to have been distributed to the owners in a complete liquidation of the section 1361 corporation. The effect of the liquidation on the owners shall be determined under the provisions of sections

331, 334(a), and, in appropriate cases, 341. Therefore, if a substantial part of the business is transferred to an actual corporation before April 15, 1966, the transaction shall be treated as if immediately before the transfer all of the assets of the enterprise had been distributed to the owners in a complete liquidation. Accordingly, the transfer of the assets to the actual corporation shall be treated as a transfer made by the owners in their individual capacities immediately after the liquidation.

* One decision was affirmed per curiam by the Court of Appeals for the Third Circuit [Estate of Wein] and the other has been on appeal to the Court of Appeals for the Fifth Circuit for 17 months [Estate of Willett].

aware of this treatment initially and now cannot change their status without payment of heavy taxes. Action on situations of this type becomes especially important because repeal of this option would otherwise result in taxable liquidations, for Federal income tax purposes, of all of these businesses.

In view of the considerations set forth above your committee's amendment repeals the portion of this option resulting in this 'liquidation-incorporation' concept in the regulations effective with the enactment of this act. Thus an incorporation of the business is to be treated under the provisions of present law relating to corporate organizations, reorganizations, etc. (pts. III and IV of subch. C of ch. 1 of the code). This in such cases generally will result in the tax free incorporation of one of these businesses. *However, to the extent that money or other property is withdrawn from the business and does not go over to the corporation, tax will apply in the same way as in the case of 'boot' in any other corporate reorganization which otherwise is tax-free.*" (Emphasis added.)

And further (S.Rep.No.1007, *supra*, p. 21 (1966–1 Cum.Bull. p. 542), U.S.Code Cong. & Admin.News 1966, p. 2162:

"Thus, for example, if after the date of enactment and before January 1, 1969, the partners of an enterprise, which has a valid election in effect under section 1361(a) *transfer all of the assets* of such enterprise to an actual corporation and receive stock in proportion to their interests there will be no tax on the transfer of property and on the issuance of stock, under sections 368(a)(1) and 354 of the Code. *On the other hand, if the partners retain money or property of the enterprise, this may be treated as 'boot' for purposes of section 356 of the code.*" (Emphasis added.)

In line with this legislative history, the Treasury Regulations were amended (T.D. 6951, 1968–1 Cum.Bull. 374), effective as of the date of statutory amendment on April 14, 1966, as follows (Treasury Regulations, § 1.1361–5(b)(2):

"*Transactions after April 14, 1966.* In transactions occurring after April 14, 1966, a section 1361 corporation shall be considered a corporation and its owners shall be considered shareholders for purposes of parts III and IV, subchapter C, chapter 1 of the Code, relating to corporate organizations and reorganizations, and to insolvency reorganizations. See § 1.-1361–12. Therefore, if the owners cease conducting the business of the enterprise in an unincorporated form after April 14, 1966, the section 1361 corporation and its owners may be treated as if the corporation has distributed its assets in complete liquidation, as provided in subparagraph (1) of this paragraph. *However, if there is a transfer of assets of a Section 1361 corporation to an actual corporation after April 14, 1966, the transaction may be treated as a reorganization within the meaning of section 386(a)(1)(C), (D), or (F).* In such a case, the transfer of the assets to the actual corporation shall be treated as a transfer made by the Section 1361 corporation to the actual corporation which is immediately followed by a transfer of all the assets and liabilities of the section 1361 corporation to the owners in exchange for their stock in the section 1361 corporation, with the consequences to the owners determined under the provisions of section 354, 355, or 356." (Emphasis added.)

The one apparent flaw in the government's argument is that the language of Section 1361(n) does not appear to support Treas.Reg. 1.1361–5(b)(2). The language to which we refer is as follows:

". . . Such enterprise [1361 corporation] shall not be considered a domestic corporation for any period on or after the effective date of such revocation." 1361(n).

It would appear from the above language that any revocation of a 1361 election automatically produces a corporate liquidation regardless of what takes place immediately after the liquidation.

If we accept plaintiffs' view that section 1361(n) necessarily means that the termination of a 1361 election must always be viewed as a distribution in liquidation and thus bring Section 1361($l$) into play, then the reason for repealing Section 1361(m) is thwarted. As we have seen from the Committee Reports set forth above, Section 1361(m) was repealed to permit the 1361 pseudo corporation to obtain the same benefits of the reorganization sections of the Code in Part III of Subchapter C [§§ 351–368] as would any other corporation. Also, Treas.Reg. 1.1361–5(b) was thereafter limited to transactions which were consummated prior to April 15, 1966. We cannot accept plaintiffs' view.

We believe that by the April 14, 1966 repealer of 1361(m), Congress intended to treat the 1361 pseudo corporation just like any other corporation for tax purposes even though the enterprise was still either a partnership or as in our case, a sole proprietorship.

We further believe that Section 1361(n) was not intended to apply to corporate distributions in liquidation because no reference is made in Section 1361(n) to the other liquidation sections of the Code or to Section 1361($l$). At best, the section is confusing when stacked up against the repeal of 1361(m).

### Liquidation v. Reorganization

The next issue to be determined, the answer to which will dispose of the case, is whether or not the transaction involved herein constituted a liquidation—reincorporation or a statutory reorganization as defined by Section 368.

Plaintiffs contend that their actions constituted a liquidation—reincorporation rather than a reorganization because the transaction does not fall within the carefully defined definitions of the reorganization subsections in Section 368 of the Code. Therefore, the transaction is governed by Section 331 of the Code and any gain or loss realized must be accorded capital gains treatment. As we will see later, however, "[a] liquidation which is followed by a transfer to another corporation of all or part of the assets of the liquidating corporation or which is preceded by such a transfer may have the effect of the distribution of a dividend or of a transaction in which no loss is recognized and gain is recognized only to the extent of 'other property.' See sections 301 and 356." Treas.Reg. 1.331–1(c).

The government counters by asserting that the transaction involved herein was both a 368(a)(1)(D) and a 368 (a)(1)(F) reorganization. We reject the government's position as to both the D and F reorganizations.

Section 368(a)(1)(D) states that a D reorganization is:

"(D) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor, or one or more of its shareholders (including persons who were shareholders immediately before the transfer), or any combination thereof, is in control of the corporation to which the assets are transferred; . . . ."

Subsection (c) of Section 368 defines control for the purposes of 368 and states in part:

"For the purposes of . . . this part, the term 'control' means the ownership of stock possessing at least 80 per cent of the total combined voting power of all classes of stock entitled to vote and at least 80 per cent of the total number of shares of all other classes or stock of the corporation."

In substance, a D reorganization requires that one or more of the shareholders of the transferring corporation must own at least 80% of the stock ownership of the new corporation.

It is clear that Mr. Stanton now owns 51% of the stock of the new corpora-

tion Stanton Refractories, Inc. Prior to November 1, 1966, he owned 100% of the "stock" of Stanton Refractory Sales Company. Therefore, the transaction fails to meet the test of a D reorganization because Mr. Stanton lacks the necessary 80% of the stock required by Section 368(c) to give him "control."

It is important to note at this point that no question of constructive ownership or attribution is raised in this case by the fact that Mrs. Stanton owns 49% of the stock of the new corporation because Section 318(b) of the Code specifically precludes the application of the constructive ownership rules thereof by its failure to refer to Section 368. See Hyman H. Berghash, 43 T.C. 743, 757 (1965), aff'd, 361 F.2d 257 (2d Cir. 1966).

The government further argues that the transaction involved herein also falls within the definition of an F reorganization.

Section 368(a)(1)(F) states that an F reorganization is

"(F) A mere change in identity, form, or place of organization, however effected."

An F reorganization is perhaps the narrowest of reorganizations as is evidenced by the official position of the Internal Revenue Service itself.

"The definition of an 'F' reorganization is by its terms more limited than the other reorganization definitions contained in 368(a)(1) of the Code." Rev.Rul. 69–185, Cum.Bul. 1969–1.

The Supreme Court of the United States enunciated a requirement which has consistently been followed since 1942 regarding F reorganizations in Helvering v. Southwest Consolidated Corp., 315 U.S. 194, 62 S.Ct. 546, 86 L.Ed. 789 (1942).

"And a transaction which shifts the ownership of a proprietary interest in a corporation is hardly a 'mere change

in identity, form or place of organization' . . . ."

315 U.S. at 202–203, 62 S.Ct. at 552, 86 L.Ed. at 796.

We are of the opinion that the transaction was not an F reorganization because there was a shift of Mr. Stanton's proprietary interest from 100% to 51%. Mrs. Stanton received the other 49% of the stock and for good business reasons. See Hyman H. Berghash, 43 T.C. 743, 749 (1965) aff'd 361 F.2d 257 (2d Cir. 1966).

### Business Purpose

As we stated earlier, Treas.Reg. 1.-331–1(c) may require that the distribution of assets upon liquidation be treated as a dividend under Section 301 or 356. Although the reference to Sections 301 and 356 is not clear, we agree with plaintiffs that those references relate to sham liquidation-reincorporations and does attempt to close a loophole in cases where the liquidation and subsequent reincorporation are motivated by the desire to avoid ordinary income tax as a dividend under Section 301. However, where the liquidation and subsequent reincorporation are motivated by valid business purposes then Sections 301 and 356 do not come into play and the transaction is treated as a liquidation under Section 331.

Although the Internal Revenue Service has abandoned its position with regard to Treas.Reg. 1.331–1(c), it is important to note for the record that the liquidation-reincorporation was motivated by several valid business purposes.

In 1961, Stanton Refractory Sales Company became the exclusive sales representative of North State Pyrophyllite Company, Inc. (hereafter North State), a North Carolina corporation which manufactured refractory materials used in the steel industry. In 1965, as set forth in the uncontested affidavit of E. M. Harvey, President of North State, Mr. Harvey and Mr. Stanton discussed the desirability of incorporating Stanton

Refractory Sales Company in order to provide business continuity in the event of Mr. Stanton's death.

Also, Mr. Stanton wished to incorporate his business for the purpose of facilitating the transfer of the enterprise to employees of the business upon his retirement and to permit the adoption of a profit sharing plan in order to encourage employee loyalty and incentive. These are both valid business purposes and are uncontested as such by the government.

The final motivating force behind incorporation was the fact that Mr. Stanton faced automatic termination of his 1361 election on January 1, 1969. The obvious answer was incorporation.

Also, there was a good reason to give 49% of the stock of Stanton Refractories, Inc. to Mrs. Stanton. She took an active part in the administration and management of the internal affairs of the business. Mr. Stanton was occupied with sales. Whether this transaction is viewed in its entirety or in segments, the liquidation-reincorporation is not a subterfuge for the avoidance of taxes.

The final result is that the distribution of assets upon revocation of plaintiffs' 1361 election in 1966 is to be accorded capital gains treatment under Section 331 of the Code. Plaintiffs are entitled to their refund.

Any statements of fact or law found in this Court's discussions regarding liability or damages which have not been specifically enumerated in the sections entitled "Findings of Fact" and "Conclusions of Law" respectively, are hereby designated "Supplemental Findings of Fact and Conclusions of Law."

## CONCLUSIONS OF LAW

1. We have jurisdiction of the parties and the subject matter involved in this case.

2. The revocation of plaintiffs' 1361 election to be taxed as a corporation which revocation was effective November 1, 1966, and subsequent reincorpora-tion must be treated for tax purposes as a complete corporate liquidation.

3. The distribution of the assets to Mr. Stanton of Stanton Refractory Sales Company is taxable under Section 331 of the Internal Revenue Code of 1954.

4. The transaction set forth in this opinion did not constitute a 368(a)(1)(D) or (F) reorganization.

5. Plaintiffs are entitled to a refund of $56,673.20 with interest as provided by law.